GEORGE M. KAGAN, PLAINTIFF-RESPONDENT, v. LILLIE
BERMAN, DEFENDANT, AND MORRIS BERMAN, DE-
FENDANT-APPELLANT.

Argued January 11, 1954—Decided February 8, 1954.

468

*Mr. Maurice C. Brigadier* argued the cause for the appellant (*Messrs. Margulies & Kaplowitz*, attorneys).

*Mr. Ira D. Dorian* argued the cause for the respondent (*Mr. Chester Weidenburner*, attorney).

The opinion of the court was delivered by

OLIPHANT, J.   Plaintiff, an attorney-at-law of this State, instituted suit against the defendants in which he sought the reasonable value of legal services allegedly rendered by him in connection with the sale of defendant's property located in Rahway.   The first count of the complaint demanded damages for the so-called legal services while a second count demanded damages as a broker's commission. The services of the plaintiff, as set forth in the first count of the complaint, were to consist of "negotiating sale of certain land owned by the defendants  *  *  *."   One of the defenses pleaded was that the alleged agreement for the payment of compensation was not in writing and therefore unenforceable in law.   Before trial of the issue judgment was entered in favor of the defendant Lillie Berman, and at the pre-trial conference plaintiff abandoned his second count to recover commissions for the sale of the real estate.

The trial resulted in a jury verdict in favor of the plaintiff in the sum of $4,000, on which judgment was duly entered.   On appeal to the Appellate Division the judgment below was affirmed, 27 *N. J. Super.* 20, and on defendant's petition we granted certification.   13 *N. J.* 360.

Defendant had been anxious to sell his property, had had a few nibbles for it, but nothing had come of these so he

called the plaintiff and asked him "whether it was possible for me to do anything about securing a large business development on Main Street that would enable him to dispose of his property." This resulted in a meeting between the parties at which plaintiff informed defendant that he did not have sufficient frontage "for a commercial development." The "feasibility of tying in other properties" was discussed and defendant said to plaintiff "you bring this transaction about whereby you can bring this whole deal to a conclusion, and bring in a commercial development and I will be glad to pay you what the thing is worth, or whatever reasonable figure that you think the thing is worth." Plaintiff finally assembled three properties, that of the defendant, one owned by Mr. and Mrs. Fox, and another by the Allen Realty Corporation, in which plaintiff was an officer and the majority stockholder. He engaged an engineer to prepare a sketch of the project and distributed that to real estate chains and brokers. On the sketch was the notation, "A Choice Location In The Heart Of The Business Section Ripe for Commercial Development. For details contact George M. Kagan," followed by the address of his law office. Later, plaintiff was advised by one Roe, a real estate broker, that he had a prospective buyer, but defendant then declined to sell for the price he had originally set of $500 per front foot. Finally he did agree to sell for the sum of $1,000 per front foot or $50,000 net. An obstacle to the sale then arose by reason of a term lease which one Treadwell held on defendant's property, whereupon plaintiff negotiated with Treadwell, removed that obstacle, the sale was consummated, and defendant received the sum of $52,500, of which $2,500 was paid to Roe, the broker. Immediately after the closing plaintiff sent defendant a bill for $5,000 for services rendered "in negotiating sale of premises owned by you * * *."

Admittedly plaintiff did perform some incidental legal services for the defendant in connection with the sale of the property such as drawing some options and the negotiating or changing of the Treadwell lease to a month-to-

month tenancy, but it is significant that Berman was represented by an attorney of his own choosing and he signed no papers in connection with the deal without first consulting him.

The question before us resolves itself into whether the services rendered by the plaintiff and which he was engaged to perform were so predominantly "brokerage" that his legal activities were purely incidental so that the whole constituted an indivisible contract for which there can be no recovery because of the statute of frauds, *R. S.* 25:1–9, which provides that no real estate agent selling real estate shall be entitled to any commission unless his authority be in writing.

The agreement between the parties can best be gleaned from the mouth of the plaintiff himself and it, we think, resolves the question.

Defendant first asked plaintiff what he could do "about effecting the sale of this property," he being anxious to dispose of it, and then the following testimony was given on questioning of the plaintiff by the court:

"Q. Will you tell us the subject matter of that call again? A. To repeat the subject matter of the telephone call, he told me they had a nibble to his property, and that nothing had happened to it. He asked me whether I wouldn't represent him in connection with the property, that he would like to sell.

By the Court:

Q. Represent how making the sale? A. Represent him in connection with creating an interest to have him dispose of his property.

Q. Do you claim that you had anything to do with the sale of this property? A. I claim that I took care of all the necessary details that were necessary for him to effect a sale to Roe and Levin.

Q. *Who effected the sale to Roe or Levin?* A. *I did.*

Q. Did you first contact them? A. They contacted me because of the interest that I had created in the situation.

Q. You don't claim that you sold this property, do you? A. I claim that I took care—I created all the interest and took care of the negotiations on behalf of Mr. Berman, to the point where these buyers were interested in getting his property.

Q. Do you still say you had anything to do with the sale of it, other than the arrangement and handling of Mr. Berman's—clarifying Mr. Berman's difficulties in his making the sale? What is your contention? Was your's anything other than a legal service? A legal service had nothing to do with the sale of the property, except

the clearing up of any complications that might have existed, and which might have prevented the sale, did it? A. My legal representation went to the extent that he asked me to carry on these things for him.

Q. Where did he get them, the complications which he asked you to carry on for him? Had he been in contact with the owners or buyers? A. He was not in contact with the buyers.

Q. Who sold the property, do you know? A. Who sold it?

Q. Yes. A. If—I don't follow Your Honor.

Q. *Who was instrumental in the sale of the property?* A. *I was.*

Q. Then you acted as a real estate agent, did you, a broker? A. No, I did not. I did not get any commission.

Q. I don't care whether you got commission or not. I ask you do you claim services for selling the property? A. I claim services acting as his legal representative in conducting the negotiations.

Q. In the sale of the property? A. Assisting him to help sell the property.

Q. *Well did you produce the purchaser?* A. *Did I produce the purchaser? Yes.*

Q. *Are you seeking recovery for that?* A. *I am seeking recovery, Your Honor, for the time and effort—*

Q. *In securing a purchaser?* A. *In securing and helping Mr. Berman to dispose of his property.*

Q. You don't answer the question. Are you seeking legal services then for producing and securing a purchaser for the property or not? That is what I want to know what your claim is. A. No, I would not say that I would say that I claim payment for securing a purchaser in the sense that you ask me the question.

Q. Did the actual sale, production of a customer and the actual sale result from your efforts, or from Mr. Berman's effort, under your guidance and advice as to how he could get it straightened out, so it could be sold? A. That is right. The sale came about as a result of my guidance of Mr. Berman, to the point where I created the interest, where Mr. Roe came in and told Mr. Berman he had a buyer. Mr. Roe was the actual broker. And Mr. Berman was guided by me as to the situation.

Q. Did Mr. Berman and Mr. Roe get in contact before you had anything to do with it? A. No.

Q. Did you produce Mr. Roe? A. That is right. Mr. Roe was in contact with me in the first part of June." (Italics supplied.)

The testimony when read in its entirety can lead to no other conclusion but that plaintiff's services were related basically to the assembling of properties, including the defendant's and that of a company which he controlled, and in negotiating and bringing to a successful conclusion the sale thereof. The services essentially were that of a

real estate broker and whatever purely legal services were rendered were merely incidental thereto. There was an indivisible contract entered into between the parties for the sale of real estate.

The case of *Stout v. Humphrey*, 69 *N. J. L.* 436 (*E. & A.* 1903), is controlling here. In a number of aspects the facts are similar. Stout brought suit on a contract for legal services rendered by him "in and about the sale" of defendant's hotel property. Stout attended to the advertising and looked after the correspondence. On being asked what his charge would be defendant said, "I will give you $1000.00 and the lot on Elwood Avenue," whereupon Stout said, "Under the circumstances I will undertake it." The property was sold, plaintiff was given $25 on account, the balance was not paid and suit resulted. At the close of plaintiff's case a nonsuit was directed by Justice Pitney, who presided, on the ground that the contract was void as contravening the statute of frauds.

On appeal the plaintiff contended that the statute of frauds is expressly confined to real estate agents or brokers and to contracts authorizing them to dispose of the property of owners, and that an attorney-at-law not carrying on commonly a real estate business, and who is employed, in part at least, by reason of his being such an attorney, to render legal services in and about the sale of real property is not within the meaning of the statute. The court answered this by saying that the statute "is aimed at any person who acts as broker or real estate agent in the very transaction in question out of which the claim to compensation arises."

Plaintiff next contended that an attorney does not cease to be such because his employment requires services not strictly professional together with other services which are professional, and the answer to this was, "but conceding that the attorney does not cease to be such when his employment is not strictly professional, and as in this case, was that of a broker or real estate agent, the mere fact that he is an attorney will not relieve him from the provisions of the statute which require the written authority of the owner

for the sale or exchange of land before he will be entitled to any commissions in such sale or exchange."

A still further contention was that the defendant did not give his attorney any power or authority to sell his property; that his only employment was to aid him in making a sale of the property. The court in concurring with the views of the trial judge said that "a construction that would take out of the statute all persons except those who are empowered to sell, in the sense of carrying the sale into effect would defeat the purpose of the statute."

▮ Here, as in that case, an agreement for legal services to be rendered standing alone would not be obnoxious to the statute, but when such an agreement is joined together in an oral contract, the basis of which is for services obnoxious to the statute, and the payment therefore claimed is "what the thing was worth," *viz.* the value of the two distinctive types of services as a whole, the result is an indivisible and integrated oral contract which falls within the prohibition of the statute and there can be no recovery. What cannot be done directly cannot be done by indirection. The contract must be taken as we find it; we cannot recast or restate its terms.

And we perceive no distinction under the facts here between a suit on an express contract for the sale of real estate and on a *quasi*-contract for the reasonable value of legal services rendered incidental to that contract. *Leimbach v. Regner,* 70 *N. J. L.* 608 (*Sup. Ct.* 1904).

The case of *Westervelt v. Kunz,* 105 *N. J. L.* 367 (*E. & A.* 1929) is not to the contrary. There an attorney-at-law brought an action to recover compensation for services rendered in connection with the sale of defendant's property and recovered his judgment. A ground for reversal was that there was error in the refusal of the trial judge to nonsuit, the contention being that in what plaintiff did for the defendant he acted as a real estate broker and that his suit, not being based on a writing, was barred by the statute of frauds. Plaintiff was not employed, as here, to find a purchaser for the real estate, the purchaser had already

appeared. What the plaintiff did do was to examine the statutes, write letters, hold interviews, pass on the legality of the contract of sale, draw the deed and close the title. The relationship between the parties, contrary to that exhibited here, was that of attorney and client, not that of broker and owner.

In concluding that the authorization for the performance of plaintiff's services was not required to be in writing by the statute of frauds the Appellate Division cited *Brown v. Winter*, 80 *N. J. L.* 632 (*Sup. Ct.* 1910), affirmed 82 *N. J. L.* 729 (*E. & A.* 1912); *Klie v. Hollstein*, 98 *N. J. L.* 473 (*E. & A.* 1923) and *J. I. Kislak, Inc. v. Judge*, 102 *N. J. L.* 506 (*Sup. Ct.* 1926). Each of these cases is an exception to the rule of the statute. The statute relates to the employment of brokers by owners of real estate to sell their property. The *Brown* case dealt with the employment by the purchaser rather than the owner; the *Klie* case dealt with an authorization to lease rather than to sell; the *Kislak* case involved the employment by one not the owner of the property to be sold.

The motion of the defendants for judgment of dismissal should have been granted and it was error not to do so.

In view of the foregoing determination we deem it unnecessary to pass on the other questions raised, rulings on the admissibility of evidence, alleged error in the charge of the court and the delegation to the jury of the duty of determining as a matter of law the scope of "legal services."

Our determination being dispositive of the cause final judgment will be entered here, *R. R.* 1:9–1(*b*). No costs.

*For reversal*—Justices Heher, Oliphant, Burling and Brennan—4.

*For affirmance*—Justice Wachenfeld—1.