Frantz H. SHERMAN, Appellant,

v.

Dr. Jeff B. BRUTON et al., Appellees.

No. 18067.

Court of Civil Appeals of Texas,
Dallas.

June 14, 1973.

**318**

H. D. Johnson, III, Scurry, Scurry, Hodges & Johnson, Dallas, for appellant.

Fritz L. Lyne, Ron Edmondson, Lyne, Klein, French & Womble, Dallas, for appellees.

GUITTARD, Justice.

Frantz H. Sherman sued Dr. Jeff B. Bruton and his wife and mother for the value of real estate consulting services, appraisal services, legal services, and professional engineering services, which plaintiff rendered to defendants in connection with a proposed lease of defendants' land for service station purposes. Our question is whether recovery is barred by lack of a written contract under the Real Estate License Act, Tex.Rev.Civ.Stat.Ann. art. 6573a § 28 (Vernon 1969). We hold that recovery is barred and that the trial court properly rendered judgment for defendants notwithstanding the verdict.

We take our statement of the evidence entirely from plaintiff's own testimony. Plaintiff was a licensed real estate broker and was also licensed as an attorney and as a professional engineer. He had known defendant Dr. Jeff Bruton for many years as a dentist and as a kinsman of his wife. Dr. Bruton asked his advice concerning use of a tract of land at the southeast corner of Lake June Road and Buckner Boulevard in Dallas. Plaintiff suggested a ground lease with a "reappraisal clause" designed to offset the effects of inflation. Dr. Bruton asked plaintiff's assistance in procuring such a lease, and, at defendant's request, plaintiff went to the doctor's office for a conference on June 14, 1969. At that time Dr. Bruton showed plaintiff data concerning rents and expenses and other information about the property and asked plaintiff if he was ready to go to work. Plaintiff said that he was, and proposed that he "study the property and appraise it, expose it to the market, and find out the highest and best use and who wanted to pay the most money for it on a ground lease." Dr. Bruton said that that would be satisfactory. They further agreed that plaintiff "would be the only one working on the property" and that Dr. Bruton would refer all inquiries to plaintiff, but that any broker who presented an acceptable deal "would get half of the normal commission." There was no discussion at that time with regard to the amount of the fee, but they agreed that plaintiff "would be paid when a deal was made." Dr. Bruton asked whether plaintiff had anything for him to sign, and plaintiff replied, "No. You are a professional and I am a professional, and we understand what it is, that I will be the only one working on it, and that I will be paid when a deal is made."

Shortly after this conversation, plaintiff asked George Shafer, a licensed real estate broker with experience in service-station leases, to find who paid the most money on the best terms and to assist in appraising the property, and told Shafer that he would pay him half of whatever he received except the legal fee. On various occasions Shafer contacted potential lessees in an effort to lease defendants' land. Although Shafer was not a party to the suit, the parties have stipulated that by agreement between Shafer and plaintiff, Shafer is to receive one-half of anything of value obtained by plaintiff from defendants arising out of the transactions underlying this cause of action, if and when collected.

Months later, after extensive negotiations with Shell Oil Company, Dr. Bruton asked plaintiff how much he would owe if a lease were made to Shell, and plaintiff told him "six per cent as he got it." Dr. Bruton said "That is fine." No lease was ever made to Shell. Dr. Bruton with-

drew his offer to Shell and subsequently made a lease to Humble Oil Company without any further negotiation on the part of plaintiff. When plaintiff found out about the Humble lease, he told Dr. Bruton that he expected to be paid, but Dr. Bruton refused, saying that he did not need plaintiff to make a deal with Humble. Plaintiff then sent a statement on his letterhead as a "realtor" for $10,000, and Dr. Bruton refused to pay.

The jury found in answer to special issues that plaintiff performed services as a real estate consultant for defendants, that defendants accepted these services and received benefits from them, and that their reasonable value was $5,000. Similar answers were made concerning appraisal services in the amount of $1,750, legal services in the amount of $1,500, and professional engineering services in the amount of $400. In an unusual instruction not complained of here, the jury was told not to answer any of the issues if they found that plaintiff "was acting as a real estate broker for the purpose of collecting a commission" rather than in the other capacities inquired about. On defendants' motion, the trial court disregarded these findings and rendered judgment for defendants notwithstanding the verdict.

■ On this appeal plaintiff contends that the trial court erred in rendering judgment notwithstanding the verdict because there was evidence to support the jury's finding that plaintiff rendered services in the various capacities found by the jury rather than as a "real estate broker." Defendants insist that plaintiff was acting as a broker as a matter of law within the definition of the term "real estate broker" in the Real Estate License Act, Tex.Rev. Civ.Stat.Ann. art. 6573a § 4 (Vernon 1969), as follows:

"The term 'Real Estate Broker' shall mean and include any person who, for another or others and for compensation or with the intention or in the expectation or upon the promise of receiving or collecting compensation: . . .

(b) Offers to sell, . . . rent or lease real estate;

(c) Negotiates, or offers or attempts or agrees to negotiate the sale . . . rental or leasing of real estate; . . .

(e) Appraises or offers or attempts or agrees to appraise real estate . . .

(j) Procures or assists in the procuring of prospects, calculated to result in the sale . . . leasing or rental of real estate . . . . ."

In determining the capacity in which plaintiff performed the various services alleged, we must look first to the oral contract of employment. The evidence above recited shows that plaintiff was employed to perform various services defined to be those of a "real estate broker" within § 4 above quoted. He expressly agreed to offer the property for lease within subdivision (b), to negotiate for a lease within subdivision (c), to appraise it for the purpose of a lease within subdivision (e), and to procure prospects for leasing within subdivision (j).

■ However, the act does not require a written contract for recovery of compensation for all services of a "real estate broker." A written contract is required only "for the recovery of any commission for the sale or purchase of real estate," under § 28.[1] Although this section uses the term "sale" rather than "lease," it applies to any lease of real estate for a term longer than one year. Stroble v. Tearl, 148 Tex. 146, 221 S.W.2d 556 (1949); Banks v. Caroline

---

1. Tex.Rev.Civ.Stat.Ann. art. 6573a § 28 (Vernon 1969):
   "No action shall be brought in any court in this State for the recovery of any commission for the sale or purchase of real estate unless the promise or agreement upon which action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunder lawfully authorized."

Realty Co., 331 S.W.2d 946 (Tex.Civ.App., Eastland 1960, writ ref'd). Admittedly, the oral agreement concerned a lease for more than one year, since it related to a "ground lease," which the parties understood to be a lease for a number of years to a lessee, such as an oil company, who would erect substantial improvements. Therefore, we must decide whether the oral contract included an agreement by defendant to pay a "commission" for leasing of the property in question, and, if so, whether in the absence of a written contract for such a commission, plaintiff may recover the reasonable value of his services.

■■ We hold that the evidence shows as a matter of law that defendant did agree to pay a "commission" within § 28. Employment of a real estate broker to procure a lease of real estate under an agreement that he will be paid when a lease is made is an agreement to pay a "commission," even though the amount or percentage is not specified. In absence of a statute requiring a written memorandum, the owner is obligated to pay a reasonable commission. McNabb v. Woolfolk, 240 S. W. 1043 (Tex.Civ.App., Fort Worth 1922, writ dism'd w. o. j.); Brady v. Richey & Casey, 202 S.W. 170 (Tex.Civ.App., San Antonio 1918, writ dism'd). The only reasonable interpretation of the oral contract of employment pleaded and proved by plaintiff is an agreement to pay a commission in an undetermined amount on successful negotiation of a lease. In the original conversation on June 10, 1969, the parties agreed that plaintiff "would be paid when a deal was made," and that any broker who presented an acceptable deal "would get half of the usual commission." Plaintiff agreed to pay Shafer for his assistance half of plaintiff's own compensation rather than any amount based on the value of Shafer's services. There is no evidence that the parties ever discussed compensation on any basis other than a commission. If there is any ambiguity in the oral contract, that ambiguity is removed by the subsequent agreement with

respect to the Shell lease that defendant would owe "six per cent as he got it." In view of plaintiff's explicit testimony concerning the terms of the oral contract, his denial that his fee was "to be based on a real estate commission" has no probative force. Consequently, we hold that the contract is one for a commission, which § 28 makes unenforceable in absence of a written memorandum.

■ Plaintiff argues that the evidence supports the jury's findings that he was not "acting as a real estate broker for the purpose of collecting a commission," but rather that he was performing real estate consultant services, appraisal services, legal services, and professional engineering services for compensation. This argument cannot prevail because the capacity in which he acted is determined by his contract of employment. Although some of the services rendered may have gone beyond the usual services of a real estate broker, there is no evidence that any of the services rendered by plaintiff were outside the scope of his employment as defined by the oral contract. The services alleged by plaintiff to be those of a "real estate consultant" were contacting prospective lessees, negotiating with representatives of Shell and Humble, conferring with Dr. Bruton concerning the status of his work, researching records at the county courthouse regarding easements that might affect a lease, and "forcing" Humble to raise its offer because of the negotiations with Shell. The evidence conclusively shows that all of these services were undertaken under the oral contract as a part of plaintiff's effort to procure a lease. The appraisal services also were rendered for the purpose of determining appropriate terms for such a lease pursuant to the same oral contract. In the absence of any legislation such as the Real Estate License Act, plaintiff's right to compensation would depend on whether he had earned a commission under the terms of his contract by procuring a prospect with whom defendant was willing to make a lease, and if so, the amount of a reasonable commission. That

contract is not enforceable under § 28 of the act, and we must determine whether he is entitled to recover for the value of his services on some other basis.

■ We hold that since plaintiff cannot recover compensation for his services in the form of a commission based on the oral contract of employment, he cannot recover for the same services on an implied contract or quasi-contract theory. Plaintiff contends that he is not claiming a commission, but is only seeking to recover the reasonable value of professional services which defendants accepted and benefited from. Even if we should construe the petition as a suit in quantum meruit for reasonable values of services accepted by defendant,[2] § 28 still presents an insurmountable obstacle. When recovery of a commission for a broker's services under an oral contract is barred under § 28, no recovery can be allowed in quantum meruit for reasonable value of the services rendered because such a recovery would defeat the purpose of the statutory requirement of a written memorandum. Taylor v. Sellers, 348 S.W.2d 99 (Tex.Civ.App., Fort Worth 1961, no writ); Landis v. W. H. Fuqua, Inc., 159 S.W.2d 228 (Tex.Civ. App., Amarillo 1942, writ ref'd); 2 Corbin, Contracts § 416 at 438 (1950).

■ Plaintiff argues that he was exempt from the provisions of article 6573a because of the following provision of § 6(3):

"The provisions of this Act shall not apply . . . nor shall this Act be construed to include in any way services rendered by an attorney at law . . . . . ."

We do not understand this language to mean that an attorney, solely by virtue of his license to practice law, is authorized to engage generally in the business of a real estate broker. Neither do we construe it as meaning that a licensed attorney, employed as a real estate broker to procure a sale or lease, may recover compensation which a licensed broker could not recover in absence of a memorandum in writing, as required by § 28. We interpret the expression "services rendered by an attorney at law" to mean services rendered by a licensed attorney whose engagement for legal services has created the relationship of attorney and client. Tobin v. Courshon, 155 So.2d 785, 99 A.L.R.2d 1149 (Fla. 1963); Krause v. Boraks, 341 Mich. 149, 67 N.W.2d 202 (1954). If a lawyer is employed to render legal services, § 6(3) exempts him from the requirements of article 6573a, even though some of the services he renders as an attorney, such as negotiations for a sale or lease, would fall within the function of a real estate broker, as defined in § 4 of that article.

We think this interpretation is required by the language of the Real Estate License Act as it now stands, but if any doubt remains, the history of the act makes the legislative intent abundantly clear. The language of § 6(3) above quoted carries forward § 3(b) of the original act, but that act also contained another and broader exemption for lawyers. Section 2(a)(1) of the original act excluded "licensed and registered attorneys" from the definition of "real estate dealer." Tex.Laws 1939 ch. 1,

2. The allegations of the petition are more appropriate to a suit on an express oral contract than to a claim in quantum meruit, as indicated by the following:
"On or about June 10, 1969, Defendant requested Plaintiff to meet at Defendant's office to discuss handling the property jointly owned by the Defendants located at the Southeast corner of Lake June and Buckner Boulevard, Dallas, Texas. At that meeting, Defendant requested Plaintiff to assist him in obtaining a ground lease for the property. Plaintiff informed Defendant that he would expose the property to various potential lessees, and would assist in negotiating a favorable lease. Defendant stated this was satisfactory and told Plaintiff that if he had any inquiries regarding the property he would refer them to Plaintiff's attention."
All of the services are alleged to have been rendered pursuant to this agreement, and there is no alternative plea in quantum meruit.

§§ 2(a)(1), 3(b), at 561, 562. In Burchfield v. Markham, 156 Tex. 329, 294 S.W.2d 795 (1956), the Supreme Court considered the question of whether under the original act, an attorney was exempt only if he acted in his capacity as an attorney. The court said that although that construction seemed correct under § 3(b) (now § 6(3)), the exemption under § 2(a)(1) of the original act was broader. Since the amendment of 1955 eliminated this broader exemption (Tex.Laws 1955 ch. 383, § 4 at 988), we conclude that the legislature intended by that amendment to restrict the exemption to services rendered by an attorney in the course of an attorney-and-client relationship.

■■■■ Plaintiff insists that under § 6(3) he can, at least, recover for his legal services, which the jury found to be worth $1,500. We reject this contention because plaintiff was not employed as a lawyer. Dr. Bruton had another lawyer, who rendered legal service for him on a regular basis. The legal services for which plaintiff claims compensation were rendered principally in drafting lease proposals in the course of negotiations with Shell. This work was not done under any separate agreement for legal services for which a separate fee would be charged, but was incidental to plaintiff's efforts to secure a lease under the original indivisible contract of employment. The lack of any separate employment for legal services is shown by the understanding between the parties that on consummation of the Shell lease, which was the subject of most of the legal services claimed, plaintiff's compensation would be "six per cent" without any additional amount for legal work. Although legal services, such as drafting of leases, cannot properly be rendered without a license to practice law, and are not within the function of a "real estate broker" under article 6573a § 4, when a broker who is also a licensed attorney is engaged by an indivisible oral contract to procure a purchaser or lessee of real estate, and any legal services he performs are only incidental to finding a purchaser and negotiating a sale or lease, the fact that he has a license to practice law does not relieve him from provisions requiring such contract to be in writing. Kagan v. Berman, 14 N.J. 467, 102 A.2d 765 (1954); Stout v. Humphrey, 69 N.J.L. 436, 55 A. 281 (Court Errors and App. 1903); cf. Stroble v. Tearl, 148 Tex. 146, 221 S.W.2d 556 (1949) (no recovery on indivisible oral contract for services in procuring sale of both real estate and personal property); Taylor v. Sellers, 348 S.W.2d 99 (Tex.Civ.App., Fort Worth 1961, no writ) (no recovery for services of subdivider's employee incidental to the sale of lots without contract in writing).

Plaintiff's claim for services rendered in the capacity of a professional engineer is governed by the same considerations. These services were rendered in obtaining surveys of the property, which were required because of questions raised in negotiations with oil companies. They were incidental to those negotiations and within the scope of plaintiff's oral contract of employment as a real estate broker.

In construing the act, we have sought to determine the legislative intent from specific statutory language without relying on our conception of the general purpose of the legislation. We are prompted to add, however, that in our opinion this case clearly falls within the policy underlying § 28, which is the same as that supporting any other provision of the Statute of Frauds, to prevent fraud and misunderstanding. Plaintiff's oral agreement with Dr. Bruton that he would undertake to procure a lease of the real estate in question and "would be paid when a deal was made," and his failure to define in writing the circumstances which would entitle him to compensation or the amount or the manner in which compensation would be determined, has led to precisely the kind of controversy which § 28 was designed to avoid. Presumably, plaintiff was well acquainted with the statutory requirement that such a contract be in writing, but he chose not to comply with that requirement. He cannot be permitted to circumvent it in this suit

by seeking recovery on a quantum meruit basis or by claiming an exemption because of his license to practice law. Consequently, the trial court properly rendered judgment against him notwithstanding the verdict.

Affirmed.