577 A.2d 490

IN THE MATTER OF LEE B. ROTH, AN ATTORNEY AT LAW.

Argued February 13, 1990—Decided August 2, 1990.

■■■■

■■■■

———

■■■■

■■■■■■■

666

*Isabel Frank,* First Assistant Counsel, argued the cause on behalf of Disciplinary Review Board.

*William R. Wood,* Deputy Ethics Counsel, argued the cause on behalf of Office of Attorney Ethics.

*William B. Scatchard, Jr.,* argued the cause for respondent (*Capehart & Scatchard,* attorneys).

*Jeffrey A. Bartolino,* Deputy Attorney General, submitted a brief on behalf of *amicus curiae* New Jersey Real Estate Commission (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Michael R. Clancy,* Assistant Attorney General, of counsel).

*Alan J. Pogarsky,* President, submitted a letter brief on behalf of *amicus curiae* New Jersey State Bar Association.

PER CURIAM.

This is an attorney-disciplinary matter. Respondent, Lee B. Roth, was found to have violated our ethics rules by attempting to obtain a real estate commission in a transaction in which he also served as the attorney for a prospective buyer of residential real estate. The case impels us to determine the appropriate ethics standards governing an attorney who undertakes to represent a client as both attorney and real estate broker in the same transaction.

The charges in this case were brought before the District XIII Ethics Committee (DEC), which found that respondent's conduct in representing a client as both an attorney and real estate broker reflected adversely on his fitness to practice law in violation of *Disciplinary Rule (DR)* 1–102(A)(6), which provided that "[a] lawyer shall not ... [e]ngage in any other conduct that adversely reflects on his fitness to practice law." [1] The DEC based that conclusion on what it characterized as respondent's attempt to receive a broker's commission without having performed any brokerage services, the conflict of interest posed by the broker/attorney arrangement, and the "unseemly appearance" created by the arrangement. The matter was appealed to the Disciplinary Review Board (DRB), which determined that the DEC's conclusions were supported by clear and convincing evidence and further determined that respondent, not having a broker's license, was not entitled to seek a commission. The DRB recommended the imposition of discipline. Respondent appealed the DRB's decision to this Court. At our request, the New Jersey Real Estate Commission and the New Jersey State Bar Association have submitted *amicus curiae* briefs to address this unclear area of attorney ethics.

I.

Respondent has been a member of the New Jersey bar since 1962 and is a well-respected authority on real estate law. Although at the time this matter arose respondent had taken the course to become a real estate broker and had passed the examination administered to real estate salespeople, he was not

---

[1]The alleged offense occurred in January 1984. The *Rules of Professional Conduct* were not adopted until September 10, 1984. Thus, we consider respondent's conduct under the strictures of our now-repealed *Disciplinary Rules*. We note that the parallel section provided in the *Rules of Professional Conduct, RPC* 8.4, does not contain the standard under which respondent was charged.

a licensed real estate broker. In January 1984, a paralegal employed in respondent's law firm became interested in purchasing a house she had seen for sale located in Flemington, New Jersey. The listing price for the house was $123,900. The paralegal asked respondent to assist her in purchasing the house and in finding a way of lowering the purchase price. Respondent told her that he would act as both her lawyer and broker in the transaction, and that as the selling real estate broker, he would be entitled to a fifty-percent share of the commission, which he would apply to a reduction in the purchase price.

Respondent's client subsequently communicated with the real estate agency owned by Carl D. Bayuk, who was the listing broker. She expressed interest in the property and stated that respondent would act both as her attorney and as the selling real estate broker. Because he was confused about respondent's dual role as attorney and broker, Bayuk called respondent directly, and respondent explained to Bayuk that, as an attorney, he, respondent, was authorized to sell real estate without a broker's license and that he would be entitled to half of the six-percent commission.

On January 20, 1984, respondent's client made a written offer of $114,000 to the sellers expressly conditioned on "the assumption that you have agreed to pay your real estate broker six percent (in this case $6,840) and that your real estate broker will divide the commission with our lawyer, who agrees that that commission be credited against the purchase price." That offer was rejected, as was a second offer, conditioned on the identical terms, for $118,500. Shortly thereafter, the property was sold to another buyer for the full listing price.

The listing real estate broker, Bayuk, subsequently filed an ethics complaint against respondent. At the hearing before the DEC, respondent stated that he had advised both his client and Bayuk that he would act as the attorney and the selling real estate broker. He testified that he did not intend to benefit

personally from the arrangement and that his share of the real estate commission was to have been applied on behalf of his client to reduce the purchase price of the property.

The DEC found that respondent had not performed any brokerage services and therefore was not entitled to any brokerage commission. The DEC also found that respondent's acting as both attorney and broker in the same transaction, combined with his being compensated in both capacities, created a conflict of interest. Thus, as noted, the DEC concluded that respondent had violated *DR* 1–102(A)(6). Although it did not comment on whether respondent had in fact performed any brokerage services, the DRB also concluded that respondent had violated that *Disciplinary Rule* and recommended that respondent be publicly reprimanded.

## II.

 It is not unlawful or unethical *per se* for an attorney to engage in the business of a real estate broker. The Advisory Committee on Professional Ethics has concluded that an attorney who is also licensed as a broker may conduct business in both fields, so long as he or she separates the two. *See, e.g., Opinion 124,* 91 *N.J.L.J.* 108 (1968). As the DEC noted below, "There would appear to be no impediment to respondent engaging in the real estate brokerage business upon obtaining a proper license and upon taking appropriate steps to separate such a brokerage business from his practice of law." An attorney who is not so licensed may also perform brokerage activities. Although the law governing the licensing of real estate brokers, *N.J.S.A.* 45:15–1 to –42, provides in pertinent part that "no person shall engage either directly or indirectly in the business of a real estate broker or salesman ... without being licensed," it exempts certain classes of people, including attorneys, from that requirement. *N.J.S.A.* 45:15–4. Thus attorneys are authorized to engage in the business of a real estate broker or salesperson without being licensed as such.

The primary question posed in this matter, however, is not whether respondent could lawfully undertake to perform brokerage activities, but whether in this transaction he compromised his professional responsibilities as an attorney by engaging in such dual activities and seeking dual compensation.

As noted, *DR* 1–102(A)(6) proscribed attorney conduct "that adversely reflects on his fitness to practice law." The DRB found that the payment of a real estate commission to an attorney who does not possess a broker's license is beyond the scope of the attorney exemption to the real estate licensing law. Although the Board accepted respondent's testimony that he sought not to profit from the transaction but rather to reduce the purchase price for his client, it found that "[r]espondent could not transfer to the paralegal that to which he was not entitled." Thus, the DRB concluded that respondent had transgressed the strictures of *DR* 1–102(A)(6) by seeking compensation in the form of a brokerage commission for work not encompassed by the "attorney" exemption to the statute.

Our courts have had few occasions to examine the statutory "attorney" exemption of *N.J.S.A.* 45:15–4. In *Spirito v. New Jersey Real Estate Commission*, 180 *N.J.Super.* 180, 434 *A.*2d 623 (1981), the Appellate Division rejected the notion that the statutory exemption makes an attorney's license the equivalent of a real estate broker's license. The court declined to grant a real estate broker's license to an attorney who claimed a right to the license by virtue of the statutory exemption. It held that an attorney is not entitled to a broker's license without meeting the apprenticeship and licensing requirements of the real estate licensing law, *N.J.S.A.* 45:15–1 to –42. The court reviewed the legislative background of the law in some detail and quoted with approval Attorney General's Formal Opinion 13–1979, which found that historically "the statutory exemption for attorneys has been grouped with those persons or institutions who by their very nature would be circumscribed in carrying out general real estate activities." 180 *N.J.Super.* at 184, 434 *A.*2d 623. The court concluded that the statutory exemption

was not meant to provide the equivalent of a broker's license to one exempt from the requirement of the licensing law, but rather to authorize attorneys to perform only those brokerage services "incidental to the normal practice of the profession or business." *Id.* at 189, 434 *A.2d* 623.

Applying *Spirito* to this case, the DRB focused on whether respondent's brokerage activities in connection with the legal representation of his client could be reasonably regarded as incidental to the performance of his legal services. The DRB concluded, "Clearly, to demand a real estate commission, as respondent did here, is not an activity incidental to the normal practice of law." The thrust of that reasoning is that an attorney has the lawful right to engage in the business of a real estate broker, but only in a manner that is ancillary and subordinate to his or her normal activities as an attorney. In this context, the term "incidental" denotes that which is of "minor importance, insignificant, and of little consequence," *In re Adoption of B.C.S.,* 245 *Kan.* 182, 777 *P.2d* 776, 778 (1989), or "subordinate or attendant in position or significance," *Hansen Properties III v. Zoning Hearing Bd. of Horsham Township,* 130 *Pa. Cmwlth.* 8, 566 *A.2d* 926, 929 n. 7 (1989), or that which appertains to "something else as primary." *Black's Law Dictionary* (5th Ed.1983). As the Attorney General, for *amicus* New Jersey Real Estate Commission, notes, "it was surely not the Legislature's intent to allow attorneys to freely engage in all aspects of the real estate brokerage business." Thus, both *amicus* and the DRB conclude, in accord with *Spirito,* that if the attorney does not have a broker's license, his or her actions as a broker must only be incidental to his or her practice of law.

■ We agree that an attorney who does not hold a license under Title 45 but seeks to act as both a broker and a lawyer for the same client in the same transaction, must confine any broker's services to those that are obviously minor, incidental, ancillary, and subordinate to the legal services entailed in the

client's representation. An unlicensed attorney who acts in a substantial capacity as a broker acts beyond the authority conferred by law under Title 45, and to that extent acts improperly as an attorney and in a manner that reflects adversely on the legal profession. *DR* 1–102(A)(6).

*Amicus* also places special significance on the fact that respondent's services as a broker were sufficient to generate a broker's commission or at least a claim to such a commission. It explains that an attorney may not, in the same transaction with respect to the same client, be compensated as both attorney and broker. It contends that the attorney must be remunerated *either* as attorney *or* broker, depending on which role is dominant in the transaction. The DRB similarly concluded that the receipt of, or entitlement to, a broker's commission indicates that significant brokerage services were actually rendered and that the attorney acted in more than an incidental capacity.

This position has merit. We recently held that in order to earn a commission, a real estate broker must be the " 'efficient procuring cause of the contract between seller and purchaser.' " *Printing Mart–Morristown v. Sharp Elecs. Corp.*, 116 *N.J.* 739, 754, 563 *A.*2d 31 (1989) (quoting *Weinstein v. Clementsen*, 20 *N.J.Super.* 367, 373, 90 *A.*2d 77 (App.Div.1952)). That requires more than merely introducing seller and buyer. *Ibid.* Rather, the broker must cause "the seller to negotiate with a customer, produced by the broker, who is ready, able and willing to perform, and where the transaction is later consummated without a substantial break in the ensuing negotiations." *DeBenedictis v. Gerechoff*, 134 *N.J.Super.* 238, 242, 339 *A.*2d 225 (App.Div.1975). It is thus readily inferable that entitlement to a commission presupposes the performance of substantial brokerage services.

In determining whether brokerage services may fairly be characterized as incidental to legal services, the compensability of such brokerage services is highly relevant. Common sense and ordinary experience tell us that an attorney who performs

sufficient work as a broker to be entitled to a commission for those services would not be acting as broker in a manner only incidental to the normal practice of law. Conversely, an attorney performing brokerage services that are really only incidental to his or her work as a lawyer would not be entitled to a commission because, as observed by *amicus*, those incidental services would be substantially less significant than the "activities normally associated with a real estate broker." We therefore hold that an attorney whose actions as a broker are undertaken pursuant to the "attorney" exemption to the licensing law, *N.J.S.A.* 45:15-4, may perform brokerage services that are only incidental to the normal practice of law, which cannot be the basis for a claim of compensation as a broker.

Our holding is consistent with *Kentucky Bar Association v. Burbank*, 539 *S.W.*2d 312 (Ky.1976), a disciplinary matter in which the Kentucky Supreme Court concluded that it was unethical for an attorney to split a commission between himself and a real estate agency in order to lower the costs for his or her client, the buyer. Following that decision, the Kentucky Attorney General issued a formal opinion stating that any attorney serving as the agent for his or her client in purchasing property is entitled to a reasonable fee for legal services, but may not accept a commission on that sale. We agree with the Kentucky Supreme Court that for an attorney to be dually compensated in this context reflects adversely on the legal profession.

We acknowledge that it may be difficult to assess the professional mix of attorney and brokerage services in a given transaction to determine with any degree of confidence whether the latter is really only incidental to the former. Nevertheless, attorneys are expected and required to make that evaluation. Attorneys are held to a higher standard of ethical propriety than are members of the general public. We have noted in other complex contexts that an attorney " 'should strive at all times to uphold the honor and to maintain the dignity of the profession....' " *In re Yaccarino*, 117 *N.J.* 175, 199, 564 *A.*2d

1184 (1989) (quoting *In re Howell,* 10 *N.J.* 139, 140, 89 *A.*2d 652 (1952)). Indeed, an attorney is "obligated to adhere to the high standard required by a member of the bar even though his activities do not involve the practice of law." *In re Herman,* 108 *N.J.* 66, 69, 527 *A.*2d 868 (1987). "This remains the benchmark of the legal profession, even though the commercial market place may accept a lower standard." *In re Servance,* 102 *N.J.* 286, 294, 508 *A.*2d 178 (1986). Accordingly, we conclude that an attorney is ethically obligated to perform only those brokerage services that are incidental or ancillary to the performance of legal services in a given transaction on behalf of the same client. It follows that in such situations, an attorney may not be independently and separately compensated for brokerage services.

### III.

Both disciplinary tribunals found that respondent's acting as attorney and broker in the same transaction created a conflict of interest. Although our courts have never before addressed that precise issue, related judicial and legislative determinations persuade us that that conclusion is correct. Situations in which an attorney acts also as broker are fraught with possible conflicts.

In addressing the areas of overlap between real estate brokers and attorneys, we have sought to draw a fairly bright line of separation. *New Jersey State Bar Association v. New Jersey Association of Realtor Boards,* 93 *N.J.* 470, 461 *A.*2d 1112 (1983), exemplifies that concern. Just as we there guarded against brokers engaging in the unauthorized practice of law, here we concern ourselves with attorneys who engage in inappropriate or improper brokerage activities. Regardless of whether he or she is licensed as a broker, when an attorney seeks a real estate commission for his or her efforts on behalf of a client, the danger of conflict, actual, potential, or perceived, is great.

Several opinions of the Advisory Committee on Professional Ethics (ACPE) reflect concern over the consequences of professional conflicts in this setting. Those opinions suggest that an attorney who represents a buyer or seller in a real estate transaction may not act as a broker in that transaction due to the "inherent conflict" between acting as a lawyer and as a broker for a party. *See, e.g., Opinion 514*, 111 *N.J.L.J.* 392 (1983); *Opinion 411*, 102 *N.J.L.J.* 451 (1978); *Opinion 312*, 98 *N.J.L.J.* 646 (1975). The ACPE has recognized that it may not be possible to avoid such conflicts, despite disclosure and good faith, and has concluded that in situations involving the dual role of attorney/broker, the attorney should not assume a position such that the client might conclude that he or she has not been represented with undivided loyalty. *Opinion 514, supra.*

As noted, respondent was not a licensed broker at the time he sought to obtain a portion of the broker's commission. Had he been licensed, however, his actions would have been prohibited by *N.J.S.A.* 45:15–17(i). That statutory provision proscribes "[c]ollecting a commission as a real estate broker in a transaction, when at the same time representing either party in a transaction in a different capacity for consideration." In *Mortgage Bankers Association of New Jersey v. New Jersey Real Estate Commission*, 200 *N.J.Super.* 584, 491 *A.*2d 1317 (1985), *rev'd and remanded*, 102 *N.J.* 176, 506 *A.*2d 733 (1986), the Appellate Division concluded that *N.J.S.A.* 45:15–17(i) prohibits a broker who receives a commission from the seller in a real estate transaction from also earning consideration for assisting the buyer in obtaining mortgage financing. In *Mortgage Bankers*, the court was concerned by the potential for a conflict of interest in situations involving dual compensation for dual representation. "We are thus persuaded that ... the legislature's intent was to permit dual representation by consent but only if there was no dual compensation therefor." 200 *N.J.Super.* at 600, 491 *A.*2d 1317. We see no lessened obligation when

the dual representation and dual compensation involves that of broker and lawyer.

Although respondent testified that he did not intend to profit from the commission, the application of his commission on behalf of his client in this fashion might nevertheless have constituted an indirect benefit to respondent. Had' the sale occurred, respondent's actions would arguably have been tantamount to his actually receiving a commission, notwithstanding his gift over to his client.

In sum, we conclude that an unacceptable conflict of interest is created if an attorney who is not licensed as a real estate broker claims or accepts a commission for participating as a broker in the purchase or sale of real estate if the attorney also represents one of the parties in the transaction. That conflict, however, may be overcome if the brokerage activities are incidental to the legal services rendered and do not generate any entitlement to compensation. We agree with *amicus* New Jersey Real Estate Commission that an attorney's real estate activities "must be limited to only those necessary to fulfill his legal representations of a client, but in no sense is he an actual real estate broker, nor should he be compensated as such."

## IV.

We are satisfied that an attorney who seeks to obtain a commission for brokerage services in connection with legal services rendered in the same transaction for the same client will have violated our ethics rules. In this case, respondent's conduct violated *DR* 1–102(A)(6); his conduct "reflects adversely on his fitness to practice law." Under our more recent Rules of Professional Conduct, we conclude that activities similar to respondent's would violate our *Rules of Professional Conduct*, prohibiting attorneys from representing clients in cases "involving conflict or apparent conflict," *RPC* 1.7(c), and in cases in which representation will result in a violation of "other law," *RPC* 1.16(a)(1).

■ An attorney who in the future violates the ethics standards as explained herein will assuredly be subject to professional discipline. We note that in the present case, however, respondent did not act nefariously or with venality. His dual role as attorney and broker was fully disclosed to all interested parties at the outset of respondent's involvement. He expressly informed complainant that he intended to apply his share of the commission to reduce the purchase price for his client. And his uncontradicted testimony before the DEC and the DRB established that he did not intend to profit from the commission. Moreover, as *amicus* New Jersey State Bar Association emphasizes, there was no clear precedent governing or proscribing respondent's actions. That *amicus* also points out that other states, contrary to our own approach, *see, e.g., N.J.S.A.* 45:15-17(i), permit attorneys to share commissions.

Both the dearth of relevant opinions and the lack of clear legislative or regulatory mandate support the perception that there was no "clear prohibition" of respondent's actions. We therefore conclude that respondent acted in the good-faith belief that his conduct did not violate disciplinary standards. Under these circumstances, this opinion is efficacious both to explain the nature of the underlying ethical misconduct and to discourage its repetition. Accordingly, we see no reason grounded in the public's confidence in the legal profession to impose formal discipline. *See In re Hinds,* 90 *N.J.* 604, 449 *A.*2d 483 (1982); *State v. Galati,* 64 *N.J.* 572, 578, 319 *A.*2d 220 (1974); *In re Giordano,* 49 *N.J.* 210, 222-23, 229 *A.*2d 524 (1967).

*For dismissal*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.