

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-13-2003

# Team Res Inc v. Exodus Comm Inc

Precedential or Non-Precedential: Non-Precedential

Docket 02-1960

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Team Res Inc v. Exodus Comm Inc" (2003). *2003 Decisions.* Paper 744.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/744

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

————

NOS. 02-1960 and 02-1961

————

TEAM RESOURCES, INC.,

Appellant in No. 02-1960

v.

EXODUS COMMUNICATIONS, INC.; JOHN DOES ONE,
TWO, THREE; C.B. RICHARD ELLIS, INC.; THE
COMMERCIAL PROPERTY SERVICES COMPANY

C. B. Richard Ellis, Inc.,

Appellant in No. 02-1961

————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 00-cv-04754)
District Judge: Hon. Joel A. Pisano

————

Submitted Under Third Circuit LAR 34.1(a)
March 10, 2003

Before: SLOVITER, NYGAARD, and ALARCÓN*, Circuit Judges

(Filed March 12, 2003)

————

OPINION OF THE COURT

————

* Hon. Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth
Circuit, sitting by designation.

SLOVITER, Circuit Judge.

Team Resources, Inc. ("TRI") filed suit against The Commercial Property Services Company ("CPS") and CB Richard Ellis, Inc. ("CBRE") alleging that they tortiously interfered with its prospective economic advantage in connection with a real estate transaction. The District Court granted summary judgment for CPS and CBRE. This appeal followed.

## I.

## BACKGROUND

Exodus Communications, Inc. is a web hosting service based in California. It provides services via regionally-based Internet Data Centers which house computer servers operating its customers' web sites. In March 1999, Exodus' Senior Director of Facilities, Janice Fetzer, and Vice President of Operations, Robert Sanford, contacted CPS for help locating properties in Northern New Jersey to expand its facilities.

CPS, which also is based in California, is a commercial real estate broker that Exodus had retained in the past. On April 7, 1999, CPS and Exodus entered into an agreement making CPS Exodus' exclusive broker. CPS is not licensed outside California but does business in other states by retaining local brokers. CPS engaged CBRE as its local broker in New Jersey. On April 27, 1999, CBRE sent CPS a list of seven properties in Northern New Jersey, including a property in Weehawken, New Jersey, that Exodus ultimately leased. CBRE's listing provided detailed information about the Weehawken property.

While CPS, CBRE and Exodus executives were looking for a suitable property, on April 9, 1999, a local Exodus employee, Thomas Fargano, called a phone number posted on a building available for lease in New Jersey. Fargano reached Gregory Sholom, TRI's President. Sholom sent Fargano information about several buildings and told Fargano about the Weehawken property during a telephone call on April 30. Fargano believed that the Weehawken property was unsuitable but agreed to tour the facility with Sholom on May 4, 1999. Sholom sent Fargano written materials about the property before the tour. On May 5, Sholom sent Fargano a letter confirming that Fargano would provide a list of any questions he had about the space. Fargano did not respond. Sholom called Fargano on May 13 and June 2 and Fargano told Sholom that Exodus was not interested in the property. Fargano had no other contact with Sholom.

CBRE took Fetzer and Sanford to the Weehawken property on May 20, 1999. Fetzer and Sanford decided it was their second choice if they did not negotiate the lease of another property. On June 1, 1999, CPS and CBRE, at Fetzer's request, forwarded a request for proposal to lease the Weehawken property to its owner, Argent Ventures. After they were unable to negotiate a lease of Exodus' preferred property, they began negotiating with Argent on June 11. Exodus representatives toured the site again with CBRE on June 17. On July 20, after nine days of negotiations, Exodus and Argent entered into a twelve year, $65 million lease agreement.

Pursuant to a July 20, 1999 Commission Agreement, Argent paid CBRE and CPS a commission of $2,807,019.83, which they divided equally. The Commission Agreement

3

contained a representation by CBRE that, aside from CPS, it was the sole broker who

initiated and procured the transaction and that no other broker is entitled to a commission.

CBRE knew when it signed the Commission Agreement that TRI had shown Exodus the

Weehawken property.

On May 18, 2000, TRI filed suit against Exodus and CBRE in New Jersey state court

alleging tortious interference with TRI's prospective economic advantage.  TRI filed an

amended complaint removing CBRE as a party based upon discussions with CBRE's

attorney.  Exodus removed the action to the District Court in September 2000.  After

discovery, TRI filed a second amended complaint adding CBRE and CPS as defendants.

Exodus filed for bankruptcy and the District Court administratively dismissed the

complaint against it.

CBRE and CPS moved for summary judgment.  The District Court granted that

motion, finding that based on the evidence submitted, no reasonable juror could conclude

that CBRE and CPS tortiously interfered with TRI's prospective economic advantage.  TRI

filed this appeal.

## II.

### JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332.  We have

jurisdiction pursuant to 28 U.S.C. § 1291.[1]  Our standard of review of a grant of summary

---

[1]    In a related appeal, No. 02-1961, CBRE challenges the District Court's order
granting TRI an extension of time to file a notice of appeal pursuant to Federal Rule of

4

judgment is plenary.  Horowitz v. Federal Kemper Life Assur. Co., 57 F.3d 300, 302 n.1

(3d Cir. 1995).  Summary judgment is warranted if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law.  Fed. R. Civ. P. 56(c).

### III.

### DISCUSSION

The District Court correctly set forth the legal principles applicable to TRI's claim.

To establish a cause of action for tortious interference with prospective economic

advantage under New Jersey law, a plaintiff must show (1) unlawful, intentional

interference with the prospect of, or reasonable expectation of, economic advantage, and

(2) a reasonable probability that the plaintiff would have received the anticipated economic

benefits had there been no interference.  Harper-Lawrence, Inc. v. United Merchants and

Mfrs., Inc., 619 A.2d 623, 630 (N.J. Super. Ct. App. Div. 1993).  The first element requires

a showing that the defendant's conduct was "'both injurious and transgressive of generally

accepted standards of common morality or of law.'"  Id. (citation omitted).  In other words,

whether conduct constitutes tortious interference with prospective economic advantage

depends on whether the conduct is "sanctioned by the 'rules of the game.'"  Id.

The second element, that it is reasonably probable that the plaintiff would have

_____

Appellate Procedure 4(a)(5).  We conclude that the District Court did not abuse its
discretion.  See Consolidated Freightways Corp. v. Larson, 827 F.2d 916 (3d Cir. 1987).

received the anticipated economic benefit absent interference, must be considered in this case in light of the principle accepted in New Jersey that a broker who first finds a potential customer and arouses the customer's interest in a property does not acquire an exclusive right to develop that interest into an actual business transaction. See McLaughlin v. Weichert Co. Realtors, 526 A.2d 1119, 1122 (N.J. Super. Ct. App. Div. 1987). Rather, when the broker has caused the seller to negotiate with a customer, produced by the broker, who is ready, able and willing to perform, and where the transaction is later consummated without a substantial break in the ensuing negotiations, the broker is the efficient procuring cause of the contract and is entitled to a commission. In the Matter of Roth, 577 A.2d 490, 494-95 (N.J. 1990). Whether a broker is the efficient procuring cause of a transaction is a question generally left to the jury, unless the court determines that summary judgment is warranted because no reasonable jury could return a verdict for the non-moving party. Vanguard Telecomm., Inc. v. Southern New England Tel. Co., 900 F.2d 645, 652 (3d Cir. 1990).

TRI argues that the District Court erred in deciding whether TRI was the broker entitled to a commission and whether CBRE and CPS wrongfully interfered with the conduct of negotiations, which, TRI contends, were questions of fact for the jury. TRI argues that CBRE's representation to Argent in the Commission Agreement that, other than CPS, it was the sole broker entitled to a commission was a misrepresentation because TRI had first shown the property to Exodus' local employee, and the property owner had told that to CBRE's salesman. TRI contends that the misrepresentation interfered with its

6

opportunity to collect a commission from the lessor.

The District Court rejected this argument, holding that CBRE and CPS had no duty to disclose TRI's showing of the property to Argent. It relied on Weinstein v. Clementsen, 90 A.2d 77 (N.J. Super. Ct. App. Div. 1952). In that case, the New Jersey appellate court held that a broker who sold a property, even though the seller told him that the plaintiff broker had introduced the buyer to the property, did not engage in improper conduct and thus was not guilty of a tortious act. Id. at 80. The court rejected the theory that the second broker was obligated to withdraw when he learned about the first broker's activities. See id.

TRI relied on Myers v. Arcadio, Inc., 180 A.2d 329 (N.J. Super. Ct. App. Div. 1962), but the District Court found that reliance misplaced. In Myers, after a broker introduced a property to a prospective buyer, the buyer secretly negotiated with the owner directly and disclaimed interest in the property to the broker. The court held that the buyer was liable for tortious interference because there was sufficient evidence to conclude that, had the buyer not gone directly to the owner, it was reasonably probable that the broker would have concluded a deal with the owner. Id. at 333. The District Court explained that Myers addressed a buyer's conduct, not the obligations of competing brokers in a real estate transaction.

We agree with the District Court that CBRE's representation to Argent that it was the sole broker entitled to a commission does not support a claim for tortious interference under New Jersey law. CBRE and CPS are not liable for tortious interference unless they engaged in improper conduct. The evidence only establishes that CBRE and CPS

7

negotiated a deal and applied for the commission with knowledge that TRI had shown a local Exodus employee the property.

TRI also relies on a letter detailing the compensation understanding between CBRE and Exodus with respect to various real estate transactions. CBRE's letter recognizes that CBRE and CPS jointly represent Exodus with respect to the New Jersey transaction. CBRE states in the letter that if Exodus prefers, CBRE will work solely on the New Jersey and other transactions and rebate 50% of the commission directly to Exodus. TRI contends that this offer had the effect of excluding it from the New Jersey transaction because two weeks after CBRE made the offer, Fargano, the local Exodus employee, told Sholom of TRI that Exodus was not interested in the property. TRI argues that the jury could infer that Exodus was considering the offer when Fargano told TRI that it was not interested in the property.

The District Court held that Exodus ultimately refused CBRE's offer and that TRI presented no evidence that Exodus received a rebate or acted in any other improper way. CBRE notes that it made the offer to Exodus before it knew that TRI showed Exodus' local employee the property. We agree that the evidence of this offer is insufficient to show tortious interference.

Having found no evidence that CBRE and CPS engaged in wrongful conduct, the District Court further concluded, in the alternative, that no reasonable juror could find that TRI was the efficient procuring cause of the transaction. It explained that the fact that TRI showed Exodus the New Jersey property, provided it basic information and arranged a tour

8

does not make it the efficient procuring cause. TRI did not have any role in the negotiations that led to the deal. See Vanguard Telecomm., 900 F.2d at 652 (entity that had no part in negotiations was not the efficient procuring cause of the transaction). While TRI contends that it would have done more had Fargano not misrepresented Exodus' interest in the property, the District Court recognized that Exodus was under no obligation to continue to deal with TRI. See McLaughlin, 526 A.2d at 1121 (no tortious interference where buyers decided to deal with a new broker because they were dissatisfied with the first, and the new broker did not induce them to discontinue dealing with the first broker).

Although TRI was understandably disappointed at the outcome, it has not shown that the District Court erred in granting summary judgment for CBRE and CPS.

## IV.

## CONCLUSION

For the reasons discussed above, we will affirm the orders of the District Court.

_____

TO THE CLERK:

        Please file the foregoing opinion.


        /s/ Dolores K. Sloviter
        Circuit Judge