No. 103,233

STEWART TITLE OF THE MIDWEST, INC., d/b/a STEWART TITLE
OF KANSAS CITY, *Plaintiff*, v. REECE & NICHOLS REALTORS,
INC., *Appellee*, and PATRICK E. MCGRATH, *Appellant*.

(276 P.3d 188)

Opinion filed May 11, 2012.

*Patrick E. McGrath*, of Overland Park, argued the cause and was on the briefs for appellant.

*Robert S. Caldwell*, of Caldwell & Moll, L.C., of Overland Park, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This case arose as an interpleader action to settle the rights to one-half of a brokerage commission resulting from a residential real estate transaction. Reece & Nichols Realtors, Inc. (RAN), the listing broker, refused to split the brokerage commission with Patrick E. McGrath, who acted as the broker for the buyer. McGrath is a licensed Kansas attorney but is not licensed under the Kansas Real Estate Brokers' and Salespersons' License Act (KREBSLA), K.S.A. 58-3034 *et seq.* RAN contended it is statutorily prohibited from paying a commission to any person not licensed under the KREBSLA. McGrath, on the other hand, maintained that, as an attorney, he is exempt from the requirements of the KREBSLA. Both parties filed summary judgment motions arguing their respective positions. The district court granted RAN's motion for summary judgment, and McGrath appeals.

We affirm, holding that an attorney is exempt from the provisions of the KREBSLA, including the prohibition in K.S.A. 2011 Supp. 58-3062(a)(10) against splitting a fee with a nonlicensee, only to the extent he or she is performing activities that are encompassed within or incidental to the practice of law, are within the context of an attorney-client relationship, and are consistent with the attorney's professional duties. This attorney exemption does not create an exception to the commission-splitting prohibition of KREBSLA because: (1) a brokerage commission is earned by producing a ready and willing buyer or seller and not by primarily performing services encompassed within the practice of law and (2) splitting a brokerage commission is inconsistent with several provisions of the Kansas Rules of Professional Conduct governing attorneys and, therefore, is inconsistent with an attorney's professional duties. Consequently, an attorney who is not licensed under the KREBSLA cannot share in a real estate brokerage commission.

## FACTS AND PROCEDURAL BACKGROUND

RAN's and McGrath's motions for summary judgment were based on the following joint stipulation of facts:

"1. This case began as an interpleader action filed by Plaintiff Stewart Title. . . . As a title company, it held in escrow a portion of a commission earned in a residential real estate contract in the sum of $13,802.91 (the 'Funds')."

"2. The Funds represent one-half of the commission paid by Defendant J-Right, Inc. ('J-Right') on the sale of a lot and residence to Gregory J. Lausier ('Lausier'). The property is located at 21311 W. 96th Terrace, Lenexa, Kansas (the 'Property').

"3. The total commission, or six percent (6%) of the Property's sales price, was calculated pursuant to the terms of an Exclusive Right to Sell Contract (the 'Listing Agreement') and was $27,605.82. The Listing Agreement is attached as Exhibit 1 and incorporated by reference."

## The Listing Agreement states, in part:

"a) Seller agrees to pay Reece & Nichols Realtors a Broker's Administrative Commission of $175.00 and a sales commission of 6% of the selling price. . . . The commission is due and payable if BROKER or anyone else, including SELLER, produces or finds a purchaser ready, willing, and able to purchase the Property at the price and terms offered now or at the price and terms acceptable to SELLER at a later date. Seller authorizes the payment of the commission to BROKER from SELLER'S proceeds at closing.

"b) BROKER shall offer a commission split of 3% listing side and 3% selling side."

## RAN and McGrath further stipulated:

"4. The full amount of the commission was paid to Stewart Title for distribution in accordance with the real estate transaction documents and Kansas law.

"5. As the listing broker, RAN was paid one-half of the commission or $13,802.91. RAN objected to the release of the remaining commission to McGrath and it was held by Stewart Title."

In June 2007, Stewart Title of the Midwest, Inc., d/b/a Stewart Title of Kansas City (Stewart Title) filed in district court an interpleader action asking the court to require McGrath and RAN to be interpleaded in the action and to settle the rights to the funds. The district court ordered Stewart Title to deposit the funds with the clerk of the district court. The order stated:

"6. Stewart Title has paid the Funds into Court. See Journal Entry filed June 29, 2007.

"7. Following the deposit of the Funds, Plaintiff Stewart Title was dismissed. Defendant J-Right has also been dismissed from this action. Defendant McGrath and Defendant RAN are the only remaining parties.

"8. Both Defendant McGrath and Defendant RAN claim a right to the Funds."

The parties' joint stipulation then set out the legal basis for each party's claim to the funds and their agreements about how the case

should be resolved depending on which legal argument was accepted by the district court. Specifically, the parties stipulated:

"13. In the event that KREBSLA does not preclude RAN from paying the commission to McGrath, then RAN admits that McGrath is entitled to the funds held by the Court in full satisfaction of the commission due and owing for his services as a buyer's agent.

"14. In the event that KREBSLA does preclude RAN from paying the remaining commission to McGrath, then McGrath admits that RAN is entitled to the funds held by the Court in full satisfaction of the commission due and owing under the Listing Agreement.

. . . .

"16. McGrath is an attorney licensed to practice in the State of Kansas. For the purposes of this case, McGrath acted as an agent for Lausier and rendered legal professional duties and services as an attorney to Lausier (said legal professional duties and services included negotiating and contracting for the purchase and construction of Lausier's new home; as well as the rendition of professional services requiring the knowledge and application of legal principles and technique to serve the interests of Lausier at Lausier's request). McGrath and Lausier had an attorney-client relationship and it was contemplated between McGrath and Lausier that McGrath's professional services would be compensated solely out of the 3% commission. Lausier is, and has always been, extremely satisfied with the services McGrath provided with respect to this real estate transaction.

"17. RAN's only objection to paying McGrath the 3% commission at issue in this case is that RAN believes it is barred from doing so under KREBSLA."

The district court adopted the parties' Joint Stipulation of Facts. The court noted that prior to McGrath's involvement in the transaction, RAN was already acting as the listing broker for the property; thus, McGrath was aware that a brokerage was involved in the real estate transaction. The court found the attorney exemption contained in K.S.A. 2011 Supp. 58-3037(c) is limited to those professional activities that are encompassed within and incidental to the practice of law in the context of an attorney-client relationship. The court ruled that this limited exception does not permit McGrath to act as a " 'licensed real estate agent' " thereby entitling him to a commission.

The district court also found that the language of K.S.A. 2011 Supp. 58-3062(c)(1) clearly and unambiguously provides that RAN, as a broker, shall not pay a commission to a nonlicensee. Further, the court quoted K.S.A. 2011 Supp. 58-3062(a)(10) and ruled:

"There is nothing in the language of the KREBSLA that would exempt RAN from this requirement and permit it to pay a commission to a non-licensee regardless of whether the non-licensee is an attorney." Accordingly, the court entered summary judgment in favor of RAN.

McGrath timely appeals. This court transferred the appeal from the Court of Appeals pursuant to K.S.A. 20-3018(c).

## STANDARD OF REVIEW

This court has de novo review of cases decided on the basis of documents and stipulated facts. *In re Trust D of Darby*, 290 Kan. 785, 790, 234 P.3d 793 (2010); see *Thomas v. Benchmark Ins. Co.*, 285 Kan. 918, 921, 179 P.3d 421 (2008) (appellate review of an order granting summary judgment is de novo where there is no factual dispute).

In addition, where the parties' arguments require the interpretation of various statutes, this court has unlimited review. *In re Trust D of Darby*, 290 Kan. at 790. Interpretation of the KREBSLA is the focus of our analysis in this case. Our standards for interpreting statutes are well defined. The most fundamental rule is that the intent of the legislature governs if that intent can be ascertained. An appellate court must first attempt to derive legislative intent from the language of the statute, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it or ignore what was written by the legislature. *Redd v. Kansas Truck Center*, 291 Kan. 176, 188, 239 P.3d 66 (2010).

These rules must be applied to the various statutes within the KREBSLA that are the focus of the parties' arguments. RAN focuses on the fee-splitting prohibitions under the KREBSLA, K.S.A. 2011 Supp. 58-3062(a)(10) and (c)(1), to argue it is absolutely prohibited from "paying a commission to any person not licensed under KREBSLA." McGrath, on the other hand, focuses on K.S.A. 2011 Supp. 58-3037(c), which he argues absolutely exempts an attorney from the provisions of the KREBSLA, including the fee-

splitting prohibitions, or alternatively exempts him under the stip-
ulated facts because he performed legal services for the buyer
Gregory Lausier.

## FEE-SPLITTING PROHIBITIONS

We begin our analysis with RAN's contention that K.S.A. 2011
Supp. 58-3062(a)(10) and (c)(1) absolutely prohibit it from paying
a commission or fee of any kind to anyone not licensed under the
KREBSLA. In 58-3062, the legislature describes activities that are
prohibited under the KREBSLA, with subparagraphs (a)(10) and
(c)(1) being the portions that specifically address payment of com-
missions. Under the first of these two provisions, K.S.A. 2011 Supp.
58-3062(a)(10), no "licensee" shall "[p]ay a commission or com-
pensation to any person, not licensed under the act, for performing
any activity for which a license is required under this act." The
second provision, K.S.A. 2011 Supp. 58-3062(c)(1), provides that
no "broker" shall "[p]ay a commission or compensation to any per-
son for performing the services of an associate broker or salesper-
son unless such person is licensed under this act and employed by
or associated with the broker." A separate statute, K.S.A. 58-
3065(a), provides that a violator of any provisions of the KREBSLA
faces statutory penalties of fines or imprisonment.

In support of its argument that the KREBSLA absolutely pro-
hibits fee splitting with a nonlicensee, RAN relies on *Burchfield v.
Markham*, 156 Tex. 329, 294 S.W.2d 795 (1956). In *Burchfield*,
the issue was whether the Texas Real Estate Dealers License Act,
Article 6573a, as it existed in 1951, prohibited payment of a real
estate commission to a Texas attorney who did not have a real estate
license. Section 20 of the Texas Act provided that it is " 'unlawful
for any real estate dealer or salesman to . . . pay directly or indirectly
any part or share of his commission or compensation arising or
accruing from any real estate transaction to any person who is not
a licensed dealer or salesman . . . .' " *Burchfield*, 156 Tex. at 332.
The Texas court reasoned this wording was absolute, without ex-
emptions or exceptions. Reconciling this provision with an attorney
exemption similar to the provision in Kansas, the Texas court con-
cluded the attorney exemption meant only that an attorney did not

need to have a real estate license to perform the same duties as would a real estate licensee. Nevertheless, because the fee-splitting prohibition was absolute, a real estate dealer or salesman could not pay an attorney any portion of the commission unless the attorney had a real estate license. *Burchfield*, 156 Tex. at 333.

RAN argues the same conclusion applies to the Kansas provisions, and the district court agreed. In making this argument, RAN ignores critical differences between the Texas and Kansas statutes. Specifically, in contrast to the Texas fee-splitting provision that applies to anyone who is not licensed under the act regardless of the type of activity the person performs, both of the Kansas fee-splitting provisions contain qualifying language that defines a limited group to whom the provisions apply.

One of the Kansas provisions, K.S.A. 2011 Supp. 58-3062(c)(1), prohibits a broker from paying another "for performing the *services of an associate broker or salesperson* unless such person is licensed under this act and employed by or associated with the broker." (Emphasis added.) The statutory definitions of "associate broker" and "salesperson" require the person to be employed by or associated with a broker and to have "participate[d] in any activity described in subsection (f)," which defines "broker" by, in part, listing activities a broker would perform. K.S.A. 2011 Supp. 58-3035(c), (f), (o).

RAN focuses solely on the "activity" component of this provision, discussing the nature of the services provided by McGrath. According to the stipulated facts, these services included "negotiating and contracting for the purchase and construction of Lausier's new home; as well as the rendition of professional services requiring the knowledge and application of legal principles and technique to serve the interest of Lausier at Lausier's request." Negotiating a contract is an activity listed in K.S.A. 2011 Supp. 58-3035(f)(3) as an activity a broker would perform. In other words, in order for K.S.A. 2011 Supp. 58-3062(c)(1) to be as broad as RAN argues, it would have to prohibit payment for any activity listed in subsection (f) of 58-3035 regardless of whether performed by a broker, associate broker, or a salesperson. Yet, the actual lan-

guage of 58-3062(c)(1) limits application to the services of an "associate broker or salesperson."

Applying this provision to the facts of this case, nothing in the stipulated facts suggests McGrath was employed by or associated with anyone else who was acting as a broker; in other words, there is no suggestion that he functioned as an associate broker or a salesperson. Therefore, K.S.A. 2011 Supp. 58-3062(c)(1) does not apply in this case.

The second provision on which RAN relies is broader in scope but still contains a critical limitation not found in the Texas statute considered in *Burchfield*. This Kansas provision, K.S.A. 2011 Supp. 58-3062(a)(10), limits the prohibition against paying a commission to any person not licensed under the act to persons who are being paid "for performing any *activity* for which a *license is required* under this act." (Emphasis added.) The activities for which a license is required are defined by K.S.A. 58-3036, which begins with the phrase "[u]nless exempt from this act under K.S.A. 58-3037." Consequently, in contrast to the Texas statute, 58-3062(a)(10) does not absolutely prohibit splitting a fee with any nonlicensee and potentially allows payment of a commission if the nonlicensee's activities are exempt from application of the KREBSLA.

Because McGrath relies on an exemption under 58-3037(c), this brings us to his argument.

## ATTORNEY EXEMPTION

McGrath suggests our conclusion that there is not an absolute prohibition against sharing a commission would end the dispute between the parties because, he argues, RAN conceded in the stipulation of facts that the attorney exemption of K.S.A. 2011 Supp. 58-3037(c) applies if the fee-splitting provision is not absolute. We do not read RAN's stipulation this broadly, however. RAN's stipulation regarding McGrath's right to receive a share of the commission was qualified, stating: "In the event that KREBSLA does not preclude RAN from paying the commission to McGrath, then RAN admits that McGrath is entitled to the funds held by the Court in full satisfaction of the commission due and owing for his services as a buyer's agent." This is not a stipulation that the

KREBSLA allows payment of the commission to McGrath as the buyer's attorney; it limits the basis of the payment to the performance of services as a "buyer's agent."

Yet, the attorney exemption does not refer to services as a *buyer's agent*. Rather, the exemption provides: "The provisions of this act shall not apply to . . . (c) Services rendered by an attorney licensed to practice law in this state in performing such attorney's professional duties *as an attorney*." (Emphasis added.) K.S.A. 2011 Supp. 58-3037(c). Consequently, the stipulation does not answer the question of whether McGrath can receive a portion of his commission for his services as an attorney. Therefore, we must consider the parties' arguments regarding the scope and application of the attorney exemption found in 58-3037(c).

In seeking application of the exemption, McGrath makes several arguments that we have organized into three categories. First, he maintains the attorney exemption is absolute. Second, he argues he is entitled to share in the brokerage commission even if the exemption is not absolute because he acted in his capacity as an attorney representing Lausier, not as a broker. Third, he makes a public policy argument as to why an attorney must be allowed to share in the commission.

*Absolute Exemption*

First, we consider McGrath's argument that K.S.A. 2011 Supp. 58-3037(c) absolutely and unqualifiedly exempts attorneys from the KREBSLA and its fee-splitting prohibitions. If we accept this argument, an attorney could act in any capacity and perform any activity as a real estate broker without a license under the KREBSLA. Yet, 58-3062(a)(10) is phrased in terms of allowing payments for *activities* for which a license is required, not in terms of allowing payments to certain classifications of individuals, such as attorneys. Likewise, K.S.A. 2011 Supp. 58-3037 provides the KREBSLA "shall not apply to . . . (c) [s]*ervices*" that are performed as the "professional duties *as an attorney*." (Emphasis added.) This means that an attorney would have to have a real estate license to perform any services that are not encompassed within and incidental to the practice of law, are not within the context of an at-

torney-client relationship, and are not consistent with the attorney's professional duties. The Court of Appeals appears to have recognized this limitation in *In re Metcalf Assocs.-2000*, 42 Kan. App. 2d 412, 213 P.3d 751 (2009), *rev. denied* 290 Kan. 1094 (2010).

In *Metcalf Assocs.-2000*, the question was whether an attorney could receive a finder's fee as part of a real estate transaction under the exemption of 58-3037 even though the attorney was not a broker. The Court of Appeals did not answer the question because it determined it did not have jurisdiction over the attorney. Nevertheless, the court noted: "Arguably, . . . [the attorney] should not have been entitled to a finder's fee simply because he is an attorney—his performance of professional duties as [an] attorney didn't involve the task of finding a buyer." *Metcalf Assocs.-2000*, 42 Kan. App. 2d at 428; see Kan. Att'y Gen. Op. No. 94-6 (concluding Kansas' attorney exemption is limited to those professional activities that are encompassed within and incidental to the practice of law in the context of an attorney-client relationship).

Although not directly discussing *Metcalf Assocs.-2000*, McGrath argues for a different interpretation of the attorney exemption, one where there would not be limitations on an attorney's activities in a real estate transaction and an attorney would be allowed to receive a portion of the brokerage commission as a finder's fee or for any other purpose. For support he cites this court's decision in *Lambertz v. Builders, Inc.*, 183 Kan. 602, 331 P.2d 559 (1958), and several out-of-state cases. These cases are distinguishable, however, because of differences between the language of the statutes at issue in those cases and the KREBSLA's attorney exemption.

In *Lambertz,* the court considered an early version of the laws covering real estate licensees in Kansas. Lambertz brought suit for an alleged breach of contract by his employer, Builders. Lambertz was involved in Builders' commercial real estate business, which included negotiating leases on Builders' property. Lambertz alleged he had an oral contract to receive a commission on lease agreements that he negotiated. Builders denied the factual allegations and also argued Lambertz could not bring the suit because of a statute, G.S. 1949, 67-1019, which prohibited a person from

bringing an action for compensation for real estate transactions without alleging and proving the person is a licensed real estate broker or salesperson. In response, Lambertz argued he did not have to be licensed because the real estate licensing act in effect at that time exempted real estate transactions made by the property owner or the owner's employee when acting on behalf of the owner. See G.S. 1949, 67-1003. This court agreed with Lambertz, concluding he was not required to plead or prove that he was licensed under the act because the services he performed fell within the exemption. *Lambertz*, 183 Kan. at 610.

According to McGrath, *Lambertz* stands for the proposition that "those specifically exempt from the statute can participate in real estate transactions and receive compensation." While *Lambertz* can be read to stand for this principle, the holding is not directly applicable to the attorney exemption under K.S.A. 2011 Supp. 58-3037(c) because the statute does not provide that all activities performed by an attorney are exempt. Rather, as we have noted, under the clear terms of the provision, an attorney is exempt only to the extent he or she is "performing such attorney's professional duties as an attorney." K.S.A. 2011 Supp. 58-3037(c).

This limitation or qualification also distinguishes the KREBSLA attorney exemption from other state statutes that have been held to absolutely exempt an attorney from a state's real estate licensure act regardless of the nature of the attorney's activities. See, *e.g.*, *Weinblatt v. Parkway-St. Johns Place Corporation*, 136 Misc. 743, 241 N.Y.S. 721 (1930) (section 442-f of the New York Real Property Law provided: " 'The provisions of this article shall not apply to . . . attorneys at law.' "); *Kribbs v. Jackson*, 387 Pa. 611, 620, 129 A.2d 490 (1957) ("Attorneys are specifically exempted from the requirements of the [Pennsylvania] Real Estate Brokers License Act."); *Elin v. Neal*, 720 S.W.2d 224, 225-26 (Tex. App. 1986) (Texas Real Estate License Act, which states that "[t]he provisions of this Act shall not apply to . . . an attorney at law licensed in this state," "specifically and unequivocally" exempts attorneys from requirement that commission agreements be in writing); see also *Atlantic Richfield Co. v. Sybert*, 51 Md. App. 74, 83, 441 A.2d 1079 (1982) (statute exempts attorneys who do not regularly engage in

real estate business or " 'hold themselves out by sign, advertisement or otherwise as offering to the general public the services authorized by this subtitle to be performed by real estate brokers' "; because attorney did not regularly engage in real estate business or hold himself out as a broker, he was entitled to standard real estate commission for procuring a willing buyer). But see *Sherman v. Bruton,* 497 S.W.2d 316, 321 (Tex. Civ. App. 1973) (neither cited by nor overruled in *Elin,* 720 S.W.2d 224; holding that critical phrase of exemption statute was "services rendered by an attorney of law" and that this phrase qualified the exemption as distinguished from the absolute exemption of prior version of statute at issue in *Burchfield* meaning exemption is not absolute and is limited to services rendered by a licensed attorney whose engagement for legal services has created the relationship of attorney and client).

In contrast to statutes that require only that an attorney have a law license in order to be exempt from real estate licensure requirements, K.S.A. 2011 Supp. 58-3037(c) requires an attorney, such as McGrath, to show that he or she was performing services consistent with his or her professional duties as an attorney to fall under the KREBSLA exemption. Under this plain language, it is clear the KREBSLA attorney exemption is not absolute.

Despite the limiting language in 58-3037(c), McGrath argues it was the "clear and unambiguous intent of the legislature" to exempt attorneys because there is no concern about dishonesty, fraud, or incompetence—which KREBSLA was created to prevent—because "attorneys, presumably, are better regulated than real estate salespersons." See *Furr v. Fonville Morisey Realty, Inc.,* 130 N.C. App. 541, 546-48, 503 S.E.2d 401 (1998) (splitting fee with a broker who is licensed in another state does not violate the purpose of the real estate licensing act, which is to protect the public from fraud and abuse).

This argument is inconsistent with our rules of statutory interpretation. Under those rules, we give effect to the legislature's express language. Only if the statute's language or text is unclear or ambiguous does the court employ canons of construction, legislative history, or other background considerations to divine the leg-

islature's intent and construe the statute accordingly. *State v. Trautloff*, 289 Kan. 793, 796, 217 P.3d 15 (2009).

Here, the express language is clear and unambiguous: K.S.A. 2011 Supp. 58-3037(c) does not allow an attorney to engage generally in the business of a real estate broker but does allow an attorney to perform some activities a broker would perform if the attorney's activities are encompassed within and incidental to the practice of law, are within the context of an attorney-client relationship, and are consistent with the attorney's professional duties.

*Professional Duties as an Attorney*

This standard for application of the attorney exemption is consistent with and similar to the standard applied under many other states' real estate licensing statutes. See, *e.g.*, *Spirito v. New Jersey Real Estate Comm'n.*, 180 N.J. Super. 180, 188-89, 434 A.2d 623 (1981) (attorney may perform some activities a broker would perform—such as negotiating a contract—if doing so is incidental to the practice of law and within the context of a relationship between an attorney and a client); Kan. Att'y Gen. Op. No. 94-6 (discussing and categorizing out-of-state cases and applying *Spirito's* test to K.S.A. 58-3037[c]).

McGrath argues he met this standard because he provided legal services to Lausier within an attorney-client relationship. Consequently, he argues, his activities are exempt from the KREBSLA license requirement. Contrary to this argument, we conclude that most cases applying this standard do not support McGrath's position and support a determination that, as a matter of law, McGrath is not entitled to share in the commission.

That does not mean there is no support for McGrath's position. In applying a standard similar to that adopted in *Spirito*, at least one court has concluded an attorney is entitled to share in a broker's commission. *E.g.*, *Lance v. Lyman*, No. 549,853, 1999 WL 557968, at *1, *2 (Conn. Super. 1999) (unpublished opinion) (denying defendant's motion to strike an attorney's claim for enforcement of a cobrokerage real estate agreement allowing for split commissions because the attorney "allegedly performed [his] duties as such attorney-at-law" and consequently was exempt from the li-

censure requirements and the restriction on his collection of a commission); *cf. Queen of Angels Hospital v. Younger,* 66 Cal. App. 3d 359, 136 Cal. Rptr. 36 (1977) (not dealing with split of commission but allowing attorney fees to be calculated as a percentage of lease income received by client and to be paid from that income even though attorney was not a licensed broker).

However, the prevailing view is that a buyer's attorney cannot share in a commission with the seller's broker. In essence, the courts adopting this prevailing view hold that fee-splitting is prohibited even if there is not a provision of the state's real estate licensing act that absolutely prohibits an attorney from splitting a brokerage commission. In other words, the attorney's request to share in the brokerage commission survives a facial interpretation of the exemption statute but fails under an "as applied" interpretation of the exemption statute.

Often, as a starting point for analysis, courts note that the right to share in a commission originates in the contract between the seller and the seller's broker; it is the seller who is obligated to pay the commission and the seller's broker who agrees to split the commission. Many courts have found it significant that an attorney representing the buyer does not have an attorney-client relationship with or perform legal services for either the seller or the seller's broker. On this basis alone, some courts have held that the buyer's attorney is not entitled to share in the commission. *E.g., Provisor v. Haas Realty, Inc.,* 256 Cal. App. 2d 850, 855-58, 64 Cal. Rptr. 509 (1967) (noting the attorney performed no legal services for seller's broker; the only legal services were performed for the buyers); *Tobin v. Courshon,* 155 So. 2d 785, 785-87 (Fla. 1963) (locating property for a client is not within the "narrow avenue through which the lawyer, not licensed as a real estate broker or salesman, may enter the ambit of the real estate broker;" the court commented it was "unable logically to accept" the attempt of "so-called client" to avoid paying for legal services and instead "trying to fasten that obligation on the seller"); *Krause v. Boraks,* 341 Mich. 149, 155, 67 N.W.2d 202 (1954) (buyer's attorney did not provide his cobroker with legal services; the only service the attor-

ney provided to the seller and the seller's broker was delivering willing buyers).

Implied in the rationale of these cases is a concept that is more extensively discussed in *Sherman v. Bruton*, 497 S.W.2d 316, 321 (Tex. Civ. App. 1973), and *Matter of Roth*, 120 N.J. 665, 667-69, 577 A.2d 490 (1990). These courts reason that the contractual trigger for earning a commission is producing a ready and willing buyer; in other words, the attorney is the procuring cause of the contract between the buyer and the seller. Consequently, it is this activity, which is primarily a broker's service, that is the principal activity for earning a commission. These courts hold that any legal services are incidental to providing brokerage services, not vice versa.

For example, in the Texas case of *Sherman*, 497 S.W.2d at 321, the court took a different view of the Texas attorney exemption than the one adopted by a different Court of Appeals panel in *Elin*, 720 S.W.2d at 226. As we have discussed, the *Elin* panel held that Texas attorney exemption was absolute. In contrast, the *Sherman* panel focused on the phrase "services rendered by an attorney at law" and noted that the phrase had not been included in the absolute exemption found in the earlier version of that statute, which was considered in *Burchfield*, 156 Tex. 329. The *Sherman* court accepted that "[i]f a lawyer is employed to render legal services, [the statute] exempts him . . . even though some of the services he renders as an attorney, such as negotiations for a sale or lease, would fall within the function of a real estate broker." *Sherman*, 497 S.W.2d at 321-22. Even so, the court held an attorney, who was also a licensed real estate broker, could not circumvent a requirement in the real estate law requiring compensation contracts to be in writing by hiding behind the attorney exemption if the attorney primarily performed services as a broker and only incidentally provided legal services. *Sherman*, 497 S.W.2d at 322.

In reaching this conclusion, the *Sherman* court focused on the nature of the contract that allowed the attorney to earn the commission. According to the parties' description of what the attorney was hired to do, the attorney was to " 'study the property and appraise it, expose it to the market, and find out the highest and best

use and who wanted to pay the most money for it on a ground lease.'" *Sherman*, 497 S.W.2d at 318. In exchange for those services, the client agreed to pay the attorney a commission. In closing the deal, the attorney drafted lease proposals, but, the court noted: "This work was not done under any separate agreement for legal services for which a separate fee would be charged, but was incidental to plaintiff's efforts to secure a lease under the original indivisible contract of employment." *Sherman*, 497 S.W.2d at 322. Because the attorney acted primarily as a broker and only incidentally as an attorney, the attorney's compensation agreement had to be in writing under the Texas real estate licensing act and the attorney could not rely on the act's attorney exemption to get around the requirement.

The New Jersey Supreme Court, in *Roth*, also noted that one earns a real estate commission by performing primarily brokerage services, meaning any legal services were subordinate to the brokerage services. *Roth*, 120 N.J. at 667-70. *Roth* is an attorney discipline case arising from an attorney's attempt to share in a real estate commission and to have that share credited as a reduction in the purchase price to the benefit of his client. The New Jersey Supreme Court concluded the attorney could not share in the commission. The court noted that for the New Jersey Real Estate Brokers and Salespersons Licensing Law's exemption for "attorneys at law" to apply, an attorney not licensed as a broker must "confine any broker's services to those that are obviously minor, incidental, ancillary, and subordinate to the legal services entailed in the client's representation." *Roth*, 120 N.J. at 672-73.

In determining if this test had been met, the *Roth* court found the manner of compensation to be highly relevant. The court noted the long-standing rule that a broker must be the efficient procuring cause of the contract between buyer and seller in order to receive a commission and concluded that a claim of entitlement to a commission is necessarily evidence of the performance of substantial brokerage services. *Roth*, 120 N.J. at 673. Thus, the court held:

"Common sense and ordinary experience tell us that an attorney who performs sufficient work as a broker to be entitled to a commission for those services would not be acting as a broker in a manner only incidental to the normal practice of

law. Conversely, an attorney performing brokerage services that are really only incidental to his or her work as a lawyer would not be entitled to a commission because . . . those incidental services would be substantially less significant than the 'activities normally associated with a real estate broker.' We therefore hold that an attorney whose actions as a broker are undertaken pursuant to the 'attorney' exemption to the licensing law, N.J.S.A. 45:15-4, may perform brokerage services that are only incidental to the normal practice of law, which cannot be the basis for a claim of compensation as a broker." *Roth*, 120 N.J. at 673-74.

Similar to the New Jersey standard, this court has held that a real estate broker is entitled to a commission if he or she is "the efficient and procuring cause of a consummated sale." *Campbell-Leonard Realtors v. El Matador Apartment Co.*, 220 Kan. 659, Syl. ¶ 1, 556 P.2d 459 (1976). Given that test, the reasoning of the *Roth* court rings true. In fact, the Listing Agreement under which McGrath asserts his right to the real estate commission at issue in this appeal stated:

"a) Seller agrees to pay Reece & Nichols Realtors a Broker's Administrative Commission of $175.00 and a sales commission of 6% of the selling price. . . . The commission is due and payable if BROKER or anyone else, including SELLER, *produces or finds a purchaser ready, willing, and able to purchase* the Property at the price and terms offered now or at the price and terms acceptable to SELLER at a later date. Seller authorizes the payment of the commission to BROKER from SELLER'S proceeds at closing." (Emphasis added.)

Consequently, McGrath could have performed all manner and amounts of legal services, but he would not have been able to share in the commission if he had not produced a ready, willing, and able buyer. That action, not his providing legal services incidental to closing the sale, serves as the basis for claiming a right to split the brokerage commission with RAN. Yet, as our Court of Appeals noted in *Metcalf Assocs.-2000*, 42 Kan. App. 2d at 428, an attorney is not entitled to a finder's fee because finding a property or a buyer for a property is not an activity that demands knowledge and application of legal principles. As such, it is not an activity encompassed within the practice of law. See *State ex rel. Stephan v. Williams*, 246 Kan. 681, 689, 793 P.2d 234 (1990) ("practice of law" has been explained to be " ' "the rendition of services requiring the knowledge and application of legal principles and technique to serve the interests of another with his consent." ' "). An attorney

may apply legal knowledge to the task of procuring a sale, but those services are incidental to the brokerage service that can be performed by a nonattorney. In other words, entitlement to a commission presupposes the performance of substantial brokerage services, not legal services.

Consequently, any legal services performed by McGrath were incidental to his procuring a sale. See *In re Adoption of B.C.S.*, 245 Kan. 182, 184, 777 P.2d 776 (1989) (defining " ' "incidental" ' " as meaning " ' "casual, minor importance, insignificant, and of little consequence" ' "). As noted by courts of other states, this conclusion is evidenced by the fact there is no additional contract between McGrath and Lausier for compensation for duties above and beyond the compensation that becomes due and owing once a willing and able buyer is procured. *E.g., Sherman*, 497 S.W.2d at 322.

An additional consideration arises under the KREBSLA's attorney exemption because of two words in K.S.A. 2011 Supp. 58-3037(c)—"professional duties." An attorney's professional duties are many and varied, depending on the circumstances, but always include compliance with the Kansas Rules of Professional Conduct (KRPC) imposed by this court on all attorneys licensed in Kansas. See Preamble to KRPC (2011 Kan. Ct. R. Annot. 407). Based on considerations of professional duties, other states have held an attorney cannot share in a real estate brokerage commission. See *Kentucky Bar Ass'n v. Burbank*, 539 S.W.2d 312, 313 (Ky. 1976) (attorney's conduct in requesting a split in the broker's commission for negotiating and drafting contracts was unethical); *Roth*, 120 N.J. at 677 ("an attorney who seeks to obtain a commission for brokerage services in connection with legal services rendered in the same transaction for the same client will have violated our ethics rules"); *Estate of Schuldt*, 428 N.W.2d 251, 258 (S.D. 1988) (improper for attorney to be dually compensated as an attorney and a broker) (Henderson, J., concurring) ("When a lawyer begins to hold himself out as being in the real estate business, he must obtain a real estate license.").

In part, these courts determined that splitting a broker's commission violated the respective state's real estate license exemption. Therefore, the attorney's conduct was unethical under attorney

discipline provisions that prohibit an attorney from representing a client if the representation will result in a violation of a law and that require an attorney to uphold the integrity of the legal profession. See *Kentucky Bar Ass'n*, 539 S.W.2d at 313; *Roth*, 120 N.J. at 678; see also Preamble to KRPC (2011 Kansas Ct. R. Annot. 408) ("A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and personal affairs."); KRPC 1.16(a)(1) (2011 Kan. Ct. R. Annot. 535) ("a lawyer shall not represent a client. . . if: [1] the representation will result in violation of the rules of professional conduct or other law").

More significantly, these courts have focused on conflict of interest concerns. Conflict of interest complications arise, the courts noted, because in a commission-split situation the fee of a buyer's attorney would be paid by the seller under an agreement the seller has made with the seller's broker, meaning a third party would pay the attorney's fee. This potential conflict is exacerbated by the attorney's personal interest in the outcome of the transaction and is heightened where the attorney acts as an agent for the buyer because the attorney earns a higher fee if his or her client, the buyer, pays more for the property. Hence, the attorney's personal benefit irreconcilably clashes with that of his or her client.

In finding this inherent conflict prevents the attorney from ethically making claim to the commission, the courts cited rules of professional conduct that correspond with KRPC 1.7(a)(2) (2011 Kan. Ct. R. Annot. 484) and KRPC 1.8 (2011 Kan. Ct. R. Annot. 494). KRPC 1.7(a)(2) provides that "[a] concurrent conflict of interest exists if: . . . (2) there is a substantial risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer." According to KRPC 1.8(f) (2011 Kan. Ct. R. Annot. 495), "[a] lawyer shall not accept compensation for representing a client from one other than the client." See *Roth*, 120 N.J. at 677; *Estate of Schuldt*, 428 N.W.2d at 258.

These statements in KRPC 1.7 and KRPC 1.8 are followed by exceptions and qualifications that may allow an attorney to continue representation of a client despite a conflict. Both the New Jersey and South Dakota Supreme Courts recognized similar ex-

ceptions in their attorney discipline rules, yet both courts adopted a blanket rule prohibiting an attorney who does not have a real estate license from receiving all or a portion of a real estate commission. *Roth*, 120 N.J. at 676; *Estate of Schuldt*, 428 N.W.2d at 258-59. The New Jersey court found the conflict was "unacceptable." *Roth*, 120 N.J. at 677. Similarly, the South Dakota court, after noting that under South Dakota's equivalent to KRPC 1.8, an arrangement may normally "pass muster" if the client is given a reasonable opportunity to seek the advice of independent counsel, declined to limit its holding to allow for this possibility. The court concluded that "[a]n attorney should be an attorney first and foremost, not broker," and that dual employment as an attorney and a broker put the attorney's "economic interests ahead of his promised loyalty to this client." *Estate of Schuldt*, 428 N.W.2d at 259.

The South Dakota Supreme Court also expressed concerns about the reasonableness of the attorney fee. *Estate of Schuldt*, 428 N.W.2d at 259. Obviously, this is a fact-based determination; yet, it seems the odds will be high for this concern to arise in Kansas as well because there is not an inherent tie between the reasonableness of the sales price for real estate and an attorney's services related to the sale. See KRPC 1.5 (2011 Kan. Ct. R. Annot. 470) (fees).

We note there are other potential issues under the KRPC. For example, KRPC 5.4(a) (2011 Kan. Ct. R. Annot. 593), prohibits splitting a legal fee with a nonattorney. This provision would be violated if the attorney is a seller's broker sharing a fee with the buyer's broker, and it arguably is violated if the attorney is the buyer's broker. Further, in some cases, as noted by RAN, there will be a conflict between the duties of an attorney to maintain his or her client's confidences and a broker's duty of disclosure under the Brokerage Relationships in Real Estate Transaction Act, K.S.A. 58-30,101 *et seq.* See KRPC 1.6 (2011 Kan. Ct. R. Annot. 480) (confidentiality of information).

In summary, the very nature of the basis for a claim to a real estate commission—being the efficient and procuring cause of a consummated sale—means an attorney asserting a claim to a brokerage commission has performed primarily brokerage services.

Even if legal services were performed, when an attorney claims a right to a brokerage commission, by default those legal services are incidental to the ultimate activity that produces the commission. While an attorney acting within the realm of an attorney-client relationship may perform some of the same services as would a real estate broker, those brokerage-type services must be incidental or ancillary to the performance of legal services for an attorney to fall within the attorney exemption under K.S.A. 2011 Supp. 58-3037(c). And, because of the inherent tension between a claim for fees arising from a real estate commission and the duties of an attorney under the KRPC, an attorney may not be separately compensated for brokerage services through the payment of a real estate commission.

Consequently, K.S.A. 2011 Supp. 58-3037(c), the attorney exemption to the KREBSLA does not exempt an attorney from the prohibition in K.S.A. 2011 Supp. 58-3062(a)(10) against splitting a fee with a nonlicensee because the commission is not earned by primarily performing services encompassed within and incidental to the practice of law, within the context of an attorney-client relationship, and in a manner consistent with the attorney's professional duties.

*Public Policy*

McGrath makes an additional argument, contending a determination that he cannot share in the commission would violate public policy because barring attorneys from participating in commission-based compensation unreasonably restrains competition in the brokerage service market. McGrath, however, cites no credible support for his argument. See *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 15, 61 P.3d 68 (2002) ("Simply pressing a point without pertinent authority, or without showing why it is sound despite a lack of supporting authority, is akin to failing to brief an issue."). Moreover, under our holding, McGrath may provide legal services in real estate transactions and in the course of that representation may incidentally perform brokerage services. He merely must contract with and be paid by his client independently of the real estate commission.

## CONCLUSION

The district court reached the correct conclusion that McGrath was not entitled to share in the brokerage commission. The activities McGrath performed to earn the fee were primarily brokerage services, and any attorney services were incidental. Yet to fall within the attorney exemption of K.S.A. 2011 Supp. 58-3037(c), McGrath had to have primarily performed legal services and any broker's services must have been minor, incidental, ancillary, and subordinate to the legal services performed. Furthermore, McGrath sharing in the fee would be inconsistent with his professional duties as an attorney.

As a result, under K.S.A. 2011 Supp. 58-3062(a)(10), RAN cannot pay a share of the commission to McGrath, and McGrath is not entitled to the funds at issue in this interpleader action.

Affirmed.