NOT DESIGNATED FOR PUBLICATION

No. 121,557

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JESSICA ANN OLIVER,
*Appellee*,

v.

KANSAS BEHAVIORAL SCIENCES REGULATORY BOARD,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; RICHARD D. ANDERSON, judge. Opinion filed September 11, 2020. Reversed.

*Brant M. Laue*, deputy solicitor general, *Jane E. Weiler*, assistant attorney general, and *Derek Schmidt*, attorney general, for appellant.

*Michael Oliver*, of Oliver & Reichel PA, of Overland Park, for appellee.

Before GREEN, P.J., ATCHESON and GARDNER, JJ.

PER CURIAM: Jessica Ann Oliver has been trying to convince the Kansas Behavioral Sciences Board for the past five years that she is qualified to pursue a license as a professional counselor. The Board has concluded Oliver's study for a master's degree in creative art therapy provides too little grounding in the fundamentals of counseling to qualify her for a license. Upon review, the Shawnee County District Court set aside the Board's decision, found Oliver's coursework to be sufficient, and directed that she be permitted to undertake the remaining steps for licensure, including sitting for a competency examination. The Board has appealed that ruling. Based on the evidentiary

1

record in these proceedings and the comparatively limited scope of judicial review for this sort of administrative agency action, we reverse the district court and reinstate the Board's determination.

FACTUAL AND PROCEDURAL HISTORY

After Oliver successfully completed a two-year course of study in 2013, Drexel University conferred on her a Master of Arts degree in creative art therapy. In 2015, Oliver applied to be licensed as a professional counselor in Kansas. The Board reviews those submissions to determine if an applicant has completed an appropriate educational program and is otherwise qualified for licensure. An applicant meeting those foundational requirements may then sit for a competency examination. Upon passing the examination, the applicant will be licensed in Kansas as a professional counselor, as provided in K.S.A. 65-5804a. Professional counselors "may diagnose and treat mental disorders" recognized by the American Psychiatric Association and catalogued in its diagnostic manual, as long as they act "under the direction" of a clinical professional counselor, a psychologist, or a medical doctor—all of whom have to satisfy more rigorous training and licensing requirements. K.S.A. 65-5804a(c)(4).

When Oliver initially applied, the Board determined she was unqualified because her graduate degree was not "in counseling," the phrase then used in K.S.A. 65-5804a(b)(2) to describe the formal educational prerequisite for licensure. Oliver appealed the decision to the district court. Judge Larry Hendricks reversed the Board's ruling, finding it to be arbitrary because it rested largely, if not exclusively, on the omission of the word "counseling" from the title of her degree. Judge Hendricks directed the Board to evaluate the substance of Oliver's coursework to determine if the degree satisfied the statutory and administrative requirements for licensure.

Oliver provided the Board with detailed syllabuses and other materials related to the courses she took and her practicum placements. The Board forwarded those materials to three mental health clinicians, including a former Board member, who had agreed to review the courses in light of the district court's remand order. They provided written assessments of varying detail. All agreed that the curriculum and coursework for the degree in creative art therapy did not meet the educational requirements for licensure as a professional counselor. Two of the three testified in June 2017 at an evidentiary hearing in front of the Board members. An assistant attorney general represented the Board at the hearing. Oliver was represented by a lawyer throughout that process and had the opportunity to present evidence and examine witnesses at the hearing. Oliver testified at the hearing and described her coursework and clinical placements. She did not offer an evaluation of her coursework from a licensed clinician.

The Board issued a lengthy order in September 2017 summarizing the testimony and a review of Oliver's coursework. The Board concluded that Oliver did not meet the educational requirements for licensure as a professional counselor and denied her application. Oliver again appealed to the district court. Since Judge Hendricks had retired, Judge Richard Anderson handled the case. Judge Anderson considered the agency record and additional written arguments from lawyers for the Board and Oliver. With her memorandum to the district court, Oliver included the course syllabuses and other materials she had provided to the Board. Those documents had not been included in the agency record, but they are part of the record on appeal from the district court. They obviously are integral to the decision-making in this case, and everyone involved at the agency level had access to them. So we see no problem with their addition and consideration in the district court.

Judge Anderson filed a lengthy ruling in February 2019 finding the Board's order to be arbitrary and unreasonable. He also found the Board failed to consider some of Oliver's coursework and evidence about her practicums or field placements. Judge

Anderson determined that Oliver satisfied the educational requirements and ordered that she be allowed to take the licensing examination. The Board has appealed that decision.

LEGAL ANALYSIS

The Board's order is an agency action subject to review under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. The KJRA outlines the specific grounds on which a court may set aside an agency determination, including errors of law, unsupported factual findings, and otherwise arbitrary or capricious outcomes. K.S.A. 77-621(c). If the issue turns on an interpretation of a statute or some other question of law, we review without deference to the agency's legal analysis. *Redd v. Kansas Truck Center*, 291 Kan. 176, 187-88, 239 P.3d 66 (2010); *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010). Judicial review is more limited when an agency's findings of fact have been challenged. A reviewing court may reject a factual finding only if it lacks substantial support in the evidence considering "the record as a whole" in light of the governing standard of proof. K.S.A. 77-621(c)(7) and (d).

Under the KJRA, we consider this appeal from the district court as if Oliver's petition for review of the Board's decision had been originally filed with us. *Powell*, 290 Kan. at 567; *Yeasin v. University of Kansas*, 51 Kan. App. 2d 939, 947, 360 P.3d 423 (2015). In other words, we are to effectively disregard the district court's decision-making. Oliver, therefore, bears the burden of showing the Board erred. See K.S.A. 77-621(a)(1); *Powell*, 290 Kan. at 567. And we owe no deference to the district court's ruling. In this case, the district court relied solely on the agency record augmented with the documents Oliver submitted. We can review those materials just as well as the district court did. See *Stewart Title of the Midwest v. Reece & Nichols Realtors*, 294 Kan. 553, 557, 276 P.3d 188 (2012); *Weber v. Board of Marshall County Comm'rs*, 289 Kan. 1166, 1175-76, 221 P.3d 1094 (2009).

4

Because the controlling issue here is the adequacy of Oliver's master's program, we turn first to the statutory and regulatory standards for academic training qualifying an applicant to pursue licensure. The Legislature set out criteria for an acceptable course of study in K.S.A. 65-5804a(b)(2):

"60 graduate semester hours including a graduate degree in counseling from a college or university approved by the board and which includes 45 graduate semester hours distributed among each of the following areas:

"(A) Counseling theory and practice;
"(B) the helping relationship;
"(C) group dynamics, processing and counseling;
"(D) human growth and development;
"(E) life-style and career development;
"(F) appraisal of individuals;
"(G) social and cultural foundations;
"(H) research and evaluation;
"(I) professional orientation; and
"(J) supervised practicum and internship."

We have quoted the statute as it was when Oliver applied in 2015, since the parties have treated it as controlling in this case. In 2018, the Legislature amended K.S.A. 65-5804a(b)(2) to provide that a degree in counseling "or a related field" would be sufficient and made a few minor wording changes elsewhere in the statute. We discuss the amended version later with respect to the Board's resurrected argument that Oliver's degree should have been categorically rejected because it was not denominated as one in "counseling." The required hours and areas of study are the same in both versions of the statute, the immediately relevant consideration for our purposes.

The Board has adopted administrative regulations elaborating on the statutory academic criteria. The pertinent regulations have not changed during these proceedings. We do not recite the regulations at length here. The parties, the Board, and the district court were cognizant of them. In K.A.R. 102-3-3a(c), the Board has set out descriptions of the 10 core areas of study identified in K.S.A. 65-5804a(b)(2). In that regulation, the

5

Board explains the purpose for requiring a specified number of hours of academic study spread among the identified subjects: "Each applicant shall have satisfactorily completed formal academic coursework that contributes to the development of a broad conceptual framework for counseling theory and practice as a basis for more advanced academic studies." K.A.R. 102-3-3a(c). The administrative regulation also directs the Board to disregard an applicant's coursework "not closely related to the field or practice of counseling" among other reasons. K.A.R. 102-3-3a(h)(4).

In this case, the Board was charged with determining if Oliver's master's degree satisfied the academic requirements for her to be licensed as a professional counselor, and to comply with Judge Hendricks' remand order, it was to do so by evaluating the content of her coursework in that program. The task is a granular one, looking at the details of what specifically Oliver studied. The broader frame is undisputed: Drexel University is a respected school, and Oliver ably completed the requirements for her master's degree.

To accomplish the task, the Board enlisted three professionals in the counseling field to review Oliver's coursework and see how her studies compared to the requirements in K.S.A. 65-5804a and the related regulations. Use of a set of evaluators entailed an ad hoc device to satisfy the district court's directive; it was not the routine application of a standard Board procedure. The approach seems facially reasonable, although its implementation may have been ragged around the edges.

We do not understand Oliver to be complaining that the three professionals were unqualified by education, training, and experience to do what they were asked to do. They functioned in much the same way as consulting experts in litigation, except that they reported to the Board, as the decision-maker, rather than to one of the parties. But, of course, experts in any setting can render opinions no better than the information they have been given no matter how well qualified they may be.

6

Oliver provided information to the Board to be reviewed by the designated practitioners. As we discuss, Oliver suggests some of the information she submitted was not passed from the Board to the evaluators. But we do not understand the Board to have limited what Oliver could submit. And as we have indicated, she did not provide an affidavit or some other personal narrative describing and assessing her coursework. Although Oliver testified at the hearing, the evaluators could not have considered that information, since they had already completed their work. The Board weighed Oliver's testimony along with the other evidence in reaching its conclusion.

The evaluators provided written reports of varying detail. One consisted of three rather cursory sentences. The administrative hearing record shows that the two clinicians who testified looked at the documents from Oliver and in some instances reviewed assigned textbooks or other course materials. They differed in how they categorized a few of the courses. But they agreed overall that Oliver's coursework and the program curriculum did not satisfy the criteria in K.S.A. 65-5804a(b)(2) and the administrative regulations.

The evaluators concluded that the master's program focused on art therapy as a treatment method or modality. So a student would become familiar with the therapeutic basis for using art as a form of treatment and how to use art therapy with a range of clients and in a range of clinical settings. In short, a graduate would be well grounded in art therapy as a particular form of treatment. But the evaluators determined Oliver's coursework and the curriculum did not provide the requisite foundation in general clinical training and skills to assess and treat clients more broadly. In other words, Oliver's education focused heavily on art therapy and only peripherally on general diagnostic and treatment skills expected of a licensed counselor.

In sum, the evaluators found Oliver's degree in art therapy was based on a comparatively narrow field of study and, thus, was just the reverse of "the broad

7

conceptual framework for counseling theory and practice" contemplated in K.S.A. 65-5804a and made explicit in K.A.R. 102-3-3a, the companion regulation. A key point of concern lay in the misfit between Oliver's academic training and the scope of the license she wishes to obtain. If licensed as a professional counselor, Oliver would not be limited to practicing art therapy and could, instead, engage in general counseling and provide other forms of treatment. Everyone seems to agree at least tacitly that Oliver would be a capable art therapist. But the evaluators determined she lacked the academic training to counsel clients outside that limited treatment modality. After the evidentiary hearing, the Board issued its order and effectively agreed with that assessment. The Board found Oliver unqualified to sit for the examination and, therefore, to be licensed as a professional counselor.

The Legislature has made a policy choice against licensing clinicians to practice in only comparatively limited specialties, such as music therapy or art therapy. It is not for us to judge that public policy. See *State v. Spencer Gifts, LLC*, 304 Kan. 755, Syl. ¶ 4, 374 P.3d 680 (2016) ("Questions of public policy are for legislative and not judicial determination, and where the legislature declares a policy, and there is no constitutional impediment, the question of the wisdom, justice, or expediency of the legislation is for that body and not for the courts."). The impact on someone such as Oliver, who to all accounts is well trained to be an art therapist, is undeniably harsh and perhaps from some perspectives unfair. But a proliferation of limited practice licenses in the mental health field might be unwieldy to administer and difficult to police. That debate, however, must be had and resolved in the halls of the State Capitol and not in this adjudicatory forum.

Given our limited review of agency actions under the KJRA, we cannot find reversible error in the Board's order. The Board ultimately made a factual finding crediting the assessment of the two practitioners who testified at the hearing. Their testimony constituted expert opinion evidence on the fit between Oliver's studies and the statutory and regulatory criteria. We are obligated to accept that testimony if it is

8

substantially supported in the record, since the Board credited it. The witnesses' professional backgrounds and their descriptions of how they undertook the assigned task furnish that support. They outlined a reasoned review of the materials and a similarly reasoned evaluation of Oliver's coursework compared to the standards for licensure of professional counselors. In turn, the Board permissibly relied on that testimony in reaching its conclusion.

As we have said, Oliver offered no comparable and competing expert evaluation of her academic training. Her own testimony, while informative, did not come with the same qualitative underpinnings. Oliver, of course, has not practiced in Kansas and lacks a perspective grounded in what professional counselors do and whether her training qualifies her academically for that field. We cannot say the Board erred in relying on the evaluators' conclusions rather than Oliver's in its ruling.

Oliver disputes the sufficiency of the evidence supporting the Board's decision because the evaluators failed to consider or account for the equivalent of 16 hours of her coursework and did not adequately consider her field placements done as part of her degree requirements. Even granting those omissions, they do not materially undermine the overall conclusions the evaluators reached. The course hours would not have been enough for Oliver to reach the 45-hour threshold in K.S.A. 65-5804a(b)(2), and, perhaps more to the point, they would not have provided enough substance to render her degree one focused on core counseling theory and practice. Likewise, the field placements, as described in the record, would not have overcome that deficiency in Oliver's academic training.

Oliver also suggests the evaluators and the Board acted without clear standards in reviewing her coursework, so the conclusions were arbitrary or at least without some defined legal anchor. We disagree. The Board came up with the evaluation process specifically for this case to satisfy the district court's remand order, so there are no

9

statutes or regulations governing that process. But the charge to the evaluators was defined, and, as we have said, the statutory and regulatory requirements for satisfactory academic programs set discernable criteria. With those guidelines, the evaluators' work was adequately described in purpose and directed with controlling standards. The process was not so amorphous that the result could be characterized as either arbitrary or capricious.[*]

[*]Judge Anderson seems to have misstepped in applying K.A.R. 102-3-3a(h)(4) that requires the Board to exclude coursework "not closely related" to counseling. He reasoned that a course not excluded on that basis must then be counted as sufficient to meet the academic requirements for licensure. Relying on that premise, he concluded Oliver met the academic qualifications because most of her coursework in art therapy was related to a recognized method of treatment for certain mental or emotional illnesses. Judge Anderson read the exclusion too broadly. While it is a sufficient condition under the regulation to exclude a course lacking a close relationship to counseling, it doesn't follow that having a close relationship necessarily requires the course to be included. Here, for example, the bulk of Oliver's coursework focused on art therapy, which really is one therapeutic method of counseling and, thus, closely related to other aspects of counseling. But Oliver's studies concentrated on art therapy to the exclusion of a broad grounding in general precepts of counseling theory and practice. The degree, therefore, didn't meet the overarching requirement of the governing statute and the related regulations.

In closing, we turn to the Board's request we revisit Judge Hendricks' ruling rejecting its argument that Oliver could be barred from consideration for licensure because the title of her master's degree lacked a reference to "counseling" and, therefore, was not "a graduate degree in counseling," as that phrase had been used in K.S.A. 65-5804a(b)(2). For the sake of argument, we accept the Board's premise that Judge Hendricks' remand order could not have been appealed to us then, so we may take up the issue now. That may be right. But we choose not to delve into that fine point of administrative law. We also put aside any considerations of mootness—a legitimate jurisprudential barrier, since we have otherwise ruled on the merits in the Board's favor.

Judge Hendricks got it right. We seriously doubt the Legislature meant that anyone with a graduate degree that did not include the word "counseling" could not be licensed as a professional counselor in Kansas. That would be a bizarre triumph of form over substance. More to a direct legal flaw, pinning a requirement for licensure on the inclusion of a magic word in the applicant's degree depicts an undeniable arbitrariness. Arbitrary agency actions cannot stand under the KJRA. K.S.A. 77-621(c)(8) (reviewing court "shall grant relief if . . . the agency action is otherwise unreasonable, arbitrary[,] or capricious"). And the law in general isn't especially enamored of talismanic tests. See *Hanna v. Plumer*, 380 U.S. 460, 466-67, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965) (noting that the outcome-determinative criterion for application of state law in diversity actions "was never intended to serve as a talisman"); *United States v. Walker*, 155 F.3d 180, 189 (3d Cir. 1998); *Reynolds v. Chrysler First Commercial Corp.*, 40 Conn. App. 725, 731, 673 A.2d 573 (1996). We don't even venture into possible equal protection problems.

The Legislature amended K.S.A. 65-5804a(b)(2) in 2018 to include degrees "in counseling *or a related field*." (Emphasis added.) As we have said, everyone agrees the amended statute does not apply in this case, and we choose not to look behind that agreement. The amended statute would seem to undo the Board's all-in-the-name argument from here on. But the amendment could have signaled a substantive change in the statute, shedding light on the meaning of the earlier version. Commonly, an amendment of statutory language substantively changes the statute's application. See *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 458, 264 P.3d 102 (2011). But that's not invariably true. Sometimes an amendment merely clarifies what is already in a statute and is not meant to alter its effect. 293 Kan. at 458-59 (discussing clarifying statutory amendments); see *United States v. Geerken*, 506 F.3d 461, 465 (6th Cir. 2007); *Liquilux Gas Corp. v. Martin Gas Sales*, 979 F.2d 887, 890 (1st Cir. 1992). We see the 2018 amendment as a clarifying one, thereby attributing good sense to the Legislature in the first instance and a later intent to make that existing good sense excruciatingly plain

11

to all. Cf. *State v. James*, 301 Kan. 898, 903, 349 P.3d 457 (2015) (court should construe statute "to avoid unreasonable or absurd results").

Having considered the record, the governing law, and the arguments from Oliver and the Board, we find no basis for reversing the Board's order that Oliver is not qualified for licensure as a professional counselor. We reverse the district court and reinstate the order of the Board.

Reversed.